## REYNOLDS EX PARTE.

1. RAILROADS: *Condemning right of way: Securing compensation to land-owner.*

Section 9, article 12, of the Constitution provides that "no property or right of way shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner in money, or first secured to him by a deposit of money, which compensation * * * shall be ascertained by a jury of twelve men in a court of competent jurisdiction, as shall be prescribed by law." HELD: That the provision as to trial by jury refers only to the final assessment of compensation, and does not prohibit the Legislature from prescribing a different method for ascertaining the amount to be deposited as security for compensation, pending proceedings to condemn a right of way, as provided for in sections 5464, 5466 Mansfield's Digest.

2. SAME: *Same.*

The act of 1873 [Mansfield's Digest, sections 5464, 5466], which provides that where a proceeding to condemn land to the use of a railway company is likely to retard the work, or business of such company, the court, or judge, in vacation, shall, on application, designate an amount of money to be deposited by the company, subject to the order of the court, for the purpose of compensating the landowner, and that on such deposit being made, the company may enter upon the land and proceed with its work, prior to the assessment and payment of damages, is not unconstitutional.

3. SAME: *Same.*

The order of the judge designating the amount of such deposit, is a step taken in the suit to condemn, and the landowner is entitled to notice of the time and

place of that proceeding as of any other had in the cause in vacation. But his·
right to notice will be waived by appearance.

CERTIORARI to *Chicot* Circuit Court.

CARROLL D. WOOD, Judge.

The Louisiana, Arkansas and Missouri Railroad Company
having instituted proceedings under the statute (*Mansf. Digest,*
*secs. 5464, 5466*) for the condemnation of a right of way over
the lands of Reynolds, the Circuit Judge, in vacation, on the
company's application, made an order designating a sum of
money to be deposited, subject to the court's order, for the
purpose of making compensation when the amount thereof
should be assessed. Reynolds then filed his petition in this·
court for a writ of *certiorari* to quash the order directing the
deposit, on the ground, among others, that the statute author-·
izing it is unconstitutional; that the judge had no power to
make the order, and that the amount to be deposited could
only be ascertained by the assessment of a jury. He also ob-
jected to the order on the ground that no legal notice of the·
application upon which it was made was served upon him.

*D. H. Reynolds,* for petitioner.

1. Argues orally the unconstitutionality of the act, as
violating *art. 12, sec. 9, Const. 1874,* citing, among others, *3*
*Paige, 45; Redfield Am. Ry. Cases, p. 230.*

2. Notice must be given as in other civil cases. *Mansf.*
*Dig., secs. 5458, 5467; Acts 1885, pp. 179, 180; Mansf. Dig.,*
*secs. 4967, 4977, 4992, 5201, 5203, 5212; 12 N. Y., 74; 130 U. S.,*
*562; Cooley Const. Lim., p. 703; 54 N. Y., 58; Manier on R. R.,*
*etc., secs. 343, 346, 453, etc.; 102 Ill., 459; 121 id., 214; 93 U. S.,*
*277.*

3. Pleadings are necessary in order to make up the issue,·
where special damages are claimed. *45 Ark., 280; 47 id., 342,*
*330–1; 45 id., 255; 44 id., 362; 101 Ill., 333; 102 id., 459; 105*
*id., 519; Lewis Em. Dom., secs, 388–9, 390–7; 111 N. Y., 600;*
*Mills Em. Dom., secs. 84, 107, 100; Manier on R. R., etc., secs.*

Reynolds ex parte.

*401, 390; 113 N. Y., 279; 108 N. Y., 490; Cooley Const. Lim., pp. 657, 672, 674.*

*John McClure,* for respondent.

Argued orally that the act is constitutional, and that the landowner is not entitled to notice, etc., etc.

1. The landowner not entitled to notice of the application to the court or judge, when it determines or fixes the amount to be deposited. *23 N. J., 232-3; 4 Ont. Ch. D., 593; 21 N. Y., 596; 43 Oh. St., 467; 9 How. Pr. N. S., 137; 25 Pa. St., 397; 40 Ark., 508; 43 Ark., 341.*

2. The making of compensation need not precede an entry upon the property, provided some definite provision is made whereby the owner will certainly obtain compensation. *34 Ala., 461; 31 Ark., 494; 19 Conn., 142; 20 Flor., 597; 19 Geo., 427; 7 Ind., 32; 34 Me., 247; Lewes Em. Dom., sec. 456; 43 Ark., 120.*

COCKRILL, C. J.   The question which controls this proceeding is the constitutionality of the seventh section of the act of April 28, 1873, which reads as follows:

"Where the determination of questions in controversy in such proceedings is likely to retard the progress of work on or the business of such railroad company, the court or judge in vacation, shall designate an amount of money to be deposited by such company, subject to the order of the court, and for the purpose of making such compensation when the amount thereof shall have been assessed as aforesaid, and said judge shall designate the place of such deposit.   Whenever such deposit shall have been made in compliance with the order of the court or judge, it shall be lawful for such company to enter upon such land and proceed with their work through and over the lands in controversy prior to the assessment and payment of damages for the use and right to be determined as aforesaid.

"In all cases where such company shall not pay or deposit the amount of damages assessed as aforesaid within thirty days

after such assessment, they shall forfeit all rights in the prem-
ises." *Mansf. Dig., secs. 5464–5–6.*

It is argued that this section attempts to authorize a pro-
ceeding which is prohibited by section 9 of article 12 of the
Constitution of 1874. That section is as follows: "No prop-
erty, nor right of way, shall be appropriated to the use of any
corporation until full compensation therefor shall be first made
to the owner in money; or first secured to him by a deposit of
money; which compensation, irrespective of any benefit from
any improvement proposed by such corporation, shall be ascer-
tained by a jury of twelve men, in a court of competent juris-
diction, as shall be prescribed by law."

Prior to the adoption of the Constitution of 1868, the 48th
section of the fifth article of which, was similar to the sec-
tion above quoted, there was no provision in the organic law
of this State requiring compensation to precede the appropria-
tion of private property for public use. In the case of the
*C. &. F. Ry. v. Turner, 31 Ark., 494,* Chief Justice ENGLISH, in
treating of the power of the Legislature under the Constitution
of 1836, said there were expressions in the case of *Martin, ex
parte, 13 Ark., 198,* which indicated that the learned Judge,
who delivered the judgment, was of opinion that it was incom-
petent even in the absence of such a provision, for the Legis-
lature to stop short of providing for actual payment of com-
pensation to the owner before his property could be appro-
priated. He states it as his opinion, however, that that view
is opposed to the clear weight of authority.

In jurisdictions where it was settled that all that could be
demanded by the owner of the property to be condemned was
provision for a remedy whereby he could certainly obtain com-
pensation, a difference of opinion existed as to what remedy
or provision was adequate to a legal certainty. In the case of
*C. & F. Ry. v. Turner, 31 Ark., sup.,* a bond with sureties,
which was all that was demanded by the statute in force prior
to the Constitution of 1868, was held to be adequate. In Cal-

ifornia, it was at one time held that, as the payment of compensation need not precede the company's entry upon the land to be condemned, an act of the Legislature was valid which gave the right of entry for the purpose of constructing the road upon paying into court a sum of money sufficient to pay the damages when assessed, or upon giving security to be approved by the court or judge (*Fox v. West Pac. Ry. Co., 31 Cal., 538*); but in the subsequent case of *Sawbone v. Belden, 51 Cal., 266*, it was ruled that the bond with sureties which the act provided for, did not afford an adequate means of compensation because the judgment against the sureties might not be efficient. See, too, *Davis v. Ry., 47 Cal., 519–21.*

These are instances of the conflict of opinion on the subject.

In addition to these perplexities, one of the inevitable results of making compensation in advance an unconditional prerequisite to the right of entry, put it in the power of a single individual upon any proposed line of railway to check its construction, if not to thwart the enterprise where time became material in the undertaking, by resorting to continuances, changes of venue, new trials and appeals.

The provision of the Constitution above quoted treats of all these difficulties, and avoids the extremes of each. It affords protection to the landowner while taking from him the power to check unnecessarily the progress of public enterprise, by requiring in advance of any appropriation of his land, actual payment of compensation or what was deemed the most certain security therefor—that is, a deposit of money, instead of a bond with sureties, as the statute formerly required. But when the landowner is secured in the manner required by the Constitution, the conditions of that instrument are fulfilled and the company is authorized to enter upon the land to construct its road without further delay. See *St. Louis & S. F. Ry. v. E. & H. F. B. Co., 85 Mo., 307; Central Branch U. P. Co. v. Atchison, etc. Ry., 28 Kans., 453 S. C.; Wagner v. Ry., 38 Ohio St., 32; Ry. v. Dyer, 35 Ark., 363.*

But a question of more difficulty is how shall the amount of the security be fixed?    Must it be "ascertained by a jury of twelve men in a court of competent jurisdiction," or does that clause of the Constitution refer only to the final assessment of the compensation, leaving the Legislature free to provide another method for ascertaining the amount of security to be demanded?    The probable design in inserting the clause as to jury trial in this connection, and its proper limitation as here used, may in some measure be elucidated by recalling the restrictions the Legislature could impose upon that privilege in a statutory proceeding unknown to the common law; and also by referring to the established practice of the courts in taking security where the law required it as preliminary to the provisional possession of property taken from the owner, or one claiming to be the owner, under process of law in other proceedings, as well as those to enforce the right of eminent domain.

*1. Right of way: Compensation for.*

In the absence of an express provision on the subject, trial by jury in a proceeding to assess  damages for appropriating a right of way, is not a constitutional right.    It was not guaranteed in such cases by the Constitution of 1836.  *Railway v. Trout, 32 Ark., 17.*   The purpose, we must suppose, of introducing this provision into the Constitutions of 1868 and 1874, was, as is said by the Supreme Court of Ohio, of a like provision in the Constitution of that State, "to enlarge the rights of the citizens by extending the right of trial by jury to a class of cases wherein it did not before exist.   But," continues the court, "we can find no evidence on the part of the framers of the Constitution to fortify this extension of the right with immunities and privileges unknown in the history of the law relating to juries and not enjoyable in other cases wherein the right of such trial previously existed."  *Reckner v. Warner, 22 Ohio St., 275.*

Now, the right to have a jury fix the amount of security to be taken as indemnity against an act thereafter to be done,

is an anomaly in other proceedings, and while that is not a
sufficient reason for holding that the framers of the Constitu-
tion may not have desired to confer the right in this class of
cases, the known practice of taking security in advance of the
assessment of damages in these (see *Gould's Digest, Chapter 140*)
as in other somewhat analogous cases, and the absence of any
known evil to be corrected growing out of an abuse of the prac-
tice, furnish strong reasons for supposing that the word "se-
cured," when used in the Constitution, was intended to be re
stricted to the sense in which it was commonly understood,.
unless a different intention is indicated. "Every word em-
ployed in the Constitution is to be expounded in its plain,.
obvious and common-sense meaning, unless the context fur-
nishes some ground to control, qualify or enlarge it." *Story's*
*Const., sec. 451.*

Now, the framers of the Constitution and the people were
familiar with the analogies of the law which permit a citizen to.
be deprived of the possession of. his property pending litiga--
tion, upon the execution by the adverse claimant of a bond.
with sureties in a sum sufficient to secure him against loss.
The actions of replevin, and unlawful detainer, and suits in
which one is ousted by a receiver appointed for the purpose,.
are familiar instances. In either case the owner is deprived
of the use of his property, and may lose the property itself, by
conversion, spoliation or destruction, and his protection is the
security which the law demands in advance for his benefit.
Security in such cases has but its common meaning of some ·
thing given or deposited to make certain the fulfilment of
an obligation, and it necessarily precedes the ripening of the
obligation. The practice designed by the Constitution seems,
to have been framed in analogy to such proceedings, and to de-
part from the former practice in condemnation proceedings only
in requiring a deposit of money in lieu of a bond with sureties.
The requirement that a deposit of money shall be made to
secure the payment of compensation to the landowner pre-

supposes that the time is not ripe for payment, else no provision for security would be needed.

It has been suggested that the clause means only a deposit of the assessment made by a jury in a condemnation proceeding as a provision for cases where the owner may refuse to accept the amount awarded as payment, or may be unknown, or not *sui juris*. It certainly covers these contingencies, and might easily have been restricted to them, if it had been so intended. But the language employed does not restrict the meaning to such cases ; it is general—compensation must be paid or secured in every case ; and, pending proceedings to condemn, it is for the Legislature to determine when the deposit by way of security may be made.

It is also suggested that the Judge may fix the amount of the security at a sum not sufficient to make " full compensation." The same objection may be urged to the assessment of a jury—on a second trial the award may be increased and so the deposit made in pursuance of the first verdict be insufficient to meet the final award. The expediency of submitting the question to one or the other is remitted to the Legislature. In either case the landowner has the further protection that his title is not divested, nor does the right to an easement vest in the corporation until the damages awarded by a jury are paid (*C. and F. Ry. v. Turner, 31 Ark., sup.; Mansf. Dig., sec. 5466, sup.*) ; and the deposit being a security also for compensation for any damages done in the attempted appropriation of the right of way, when the proceeding proves unsuccessful or is abandoned by the corporation, the owner may recover the deposit and retain his land.

The Ohio Constitution contains a provision almost identical with the one in question. The Supreme Court of that State in *Wagner v. Ry., 38 Ohio St., sup.*, construed it as meaning that the right of entry by the company and the right to receive compensation by the landowner, are co-existent ; and that when entry is made, the landowner is *eo instanti* entitled to receive

LII.—22.

compensation. But that conclusion seems to us to lay stress upon the first part of the provision in relation to payment of the compensation at the expense or in disregard of the subsequent provision as to the security to be given for payment. The latter is of equal dignity with the former, and entitled to the same consideration in construing the provision. The Supreme Court of Missouri, on the other hand, under a more restrictive constitutional provision declaing that until compensation "shall be paid to the owner, or into court for the owner, the property shall not be disturbed," hold that the company may enter pending an appeal, after paying into court the amount assessed by the jury, without giving the owner the right *eo instanti* to receive the money thus. paid, but that it remains on deposit as security for the judgment if it is affirmed, or as security for any judgment that may be subsequently rendered. See, too, *A. T. & S. F. Ry. v. Schneider, 127 Ill., 151.*

2  Same.    The act assailed in this case was passed, as was said in *C. & F. Ry. v. Turner, 31 Ark., 494,* to conform to the provisions of the Constitution of 1868, and has been steadily acquiesced in since the adoption of the present instrument. Many miles of railway have been constructed under it and many condemnation proceedings had where the entry was made before the judgment of condemnation—not a few of which have passed through this court without an intimation of the invalidity of any provision of the act; the Circuit Judges from the passage of the act have conformed their practice to the requirements of the provision that is now attacked; and finally, we have an affirmance of its validity by this court in the case of *Niemeyer v. Ry., 43 Ark., 111,* in an opinion by Judge EAKIN, prior to the death of Chief Justice ENGLISH. The state of the case was exactly that now presented, except that the landowner resorted to equity for an injunction instead of seeking his remedy through *certiorari,* as the petitioner here does. The court say that " if the proposed action of the railway be authorized there can be no doubt of

the power to arrest it by injunction;" and, after discussing
other questions, and mentioning the fact that the only author-
ity of the company in appropriating the right of way at that
time was by virtue of a deposit of money made under the
order of the court where the proceedings to condemn were
pending, denied relief to the complainants. The question now
presented is not argued by the court in that case, and we are
asked for that reason to overrule the decision.

It is essential in any case that a prohibition upon the power
of the Legislature should be certainly found in the Constitu-
tion to warrant the court in declaring a legislative act void;
but where the act has been long acquiesced in by the legis-
lative and judicial branches of the government, the courts
should be satisfied that it is repugnant not only to the express
and unequivocal terms of the instrument, but to its intent and
reason, before resorting to their extraordinary power of nullifi-
cation. "Where a particular construction has been accepted
as correct, and especially when this has occurred contempo-
raneously with the adoption of the Constitution, and by those
who had opportunity to understand the intention of the instru-
ment, it is not to be denied that a strong presumption exists
that the construction rightly interprets the intention." *Cooley
Const. Lim., 67; State v. Sorrells, 15 Ark., 664.* Such matters
are not entitled to controlling weight, for acquiescence for no
length of time can legalize a clear usurpation of power, but
when an examination of the Constitution leaves a doubt, the
judges are warranted in looking to these extraneous matters for
aid. We cannot draw from the language of the Constitution
the plain and unmistakable meaning that the act in question is
a usurpation, and therefore declare it to be a legitimate exer-
cise of the legislative prerogative.

The act of the Circuit Judge in fixing the amount of de-    3. Same.
posit, is a step taken pending the suit to condemn; the land-
owner is interested in ascertaining the amount to be deposited,
and is entitled to notice of the time and place of the proceed-

ing as of any other step taken in the cause in vacation.    See *Mansf. Dig.*, *sec. 5212.*    But the appearance of the petitioner was a waiver of notice in this case.

Other questions have been argued by counsel, but the power of the Judge to act is the only one presented by this proceeding.    So far as the plaintiff can litigate the other questions at all, it must be by independent action in the appropriate tribunal, or by appeal from the judgment of condemnation.

The writ will be quashed.

HEMINGWAY, J., *dissento.*