SUMPTER *v.* DUFFIE.

Opinion delivered October 29, 1906.

ELECTION CONTEST—JURISDICTION OF CIRCUIT COURT.—Art. 7, § 52, Const. 1874, providing that "in all cases of contest for any county, township or municipal office an appeal shall lie at the instance of the party aggrieved from any inferior board, council or tribunal to the circuit court," etc., did not inhibit the Legislature from conferring upon the circuit court original jurisdiction of contests in regard to the office of county and probate judge.

Prohibition to Garland Circuit Court; writ denied and petition dismissed.

*R. G. Davies, C. V. Teague* and *J. P. Clarke,* for petitioner.

1.  As the office of county judge is a county office, the circuit court neither has, nor can it be invested with, original jurisdiction to hear a contest concerning the title thereto, where the basis of the contestant's claim is alleged fraudulent and illegal voting and false certifying by election officers. Sec. 24, art. 9, and sec. 52, art. 7, Const.; 51 Ark. 559; 32 Ark. 553; 69 Ark. 610.

2.  The circuit court can not exercise original jurisdiction in such cases because the Legislature has failed to indicate a subordinate tribunal before which such an election contest can be tried and determined; because an election contest is not a "case" in the sense of that provision of the Constitution which constitutes the circuit court the great residuum of unassigned jurisdiction. Besides, since the original jurisdiction of the circuit court exists in all cases where jurisdiction is not exclusively vested in other courts or tribunals provided by the Constitution, its jurisdiction under the doctrine declared in *State* v. *Devers* would be original in all cases, if it could take jurisdiction in any. 34 Ark. 188; 14 Wash. 604; 41 La. Ann. 846; 44 *Ib.* 863; 43 Md. 572; 87 Mo. 487; 67 Tex. 555; 81 Ky. 43; 15 Ohio St. 114; 88 Mo.

559; 70 Ark. 240; 61 Ark. 295; 183 Ill. 323; 9 Ind. 475; 52 Tex. 335; 78 Ill. 261; 1 Met. (Ky.), 553.

3. Under the allegations of Lakenan's petition in the circuit court, it is plain that he relies upon an attack on the regularity and honesty of the election for the foundation of his claim, and the proceeding instituted by him is an election contest, in the strictest sense. On that state of facts the jurisdiction of the circuit court to hear and determine the same state of facts under another name would be such a palpable evasion of the constitutional inhibition upon that court to entertain original jurisdiction as to amount to a plain violation of that instrument. The usurpation act is available only in those cases where the officer's right of incumbency is challenged on some ground that does not seek to go behind the certificate of his election and his commission. 50 Ark. 271; 96 Ky. 63; 14 Wis. 115; 100 Ala. 634; 47 Cal. 524; 47 Ohio St. 232; 30 Kan. 661; 38 Mich. 405; 33 Minn. 536; 35 Minn. 385; 31 Ill. 234; 25 Ark. 32; 42 Mo. 179; 15 Ohio St. 130; 52 Tex. 344; 88 Mo. 159; 18 Col. 561; 55 Ark. 255; 77 Tenn. 644; 44 Pa. 332; 28 Ark. 139.

*Greaves & Martin* and *Wood & Henderson,* for respondent.

1. (*a*) The act of 1875, which named the circuit court as the court in which to institute contest proceedings for the office of county judge, is constitutional. Section 24, art. 19, Const., is express authority and positive direction to the Legislature to provide the mode of contests for all county, township and municipal offices, and for all State offices not specifically provided for in sec. 4, art. 16, Const. The word "mode," as used in sec. 24, art. 19, means place as well as manner of trial. 51 Ark. 559. See, also, 4 N. W. 519; 91 U. S. 367.

(*b*) The jurisdiction of the circuit court is fixed in positive and direct language by the Constitution, sections 11 and 14, art. 7. The jurisdiction of the other courts is also fixed in language equally positive by other provisions of the Constitution. Hence the framers of that instrument were not seeking either to confer or limit the jurisdiction of the circuit court when they enacted sec. 51, art. 7, and it is not thereby limited to appellate jurisdiction only. Contemporaneous legislative construction of the provisions of a constitution is to be considered in determining the

meaning of such provisions. 52 Ark. 339; 6 Am. & Enc. Law (2 Ed.), 931; 6 Col. 97; 18 Nev. 44; 2 Wend. (N. Y.), 266. "Judicial interposition to avoid an act of the Legislature is never justified unless it is clear beyond rational controversy that it has passed the bounds set by the fundamental law." 60 Ark. 349.

2. If the act is unconstitutional, the circuit court would still under its general jurisdiction and powers (no other provision having been made by the Legislature for contesting for such an office) have jurisdiction to entertain the action. Sec. 11, art. 7, Const.; 60 Ark. 201; 68 Ark. 555; 28 Ark. 451; 61 Ark. 295; 50 Ark. 266. See, also, 35 N. E. 538; 17 Ill. 167; 101 Ind. 36; 44 Mo. 425; 44 N. W. 471; 7 Ohio, Dec. 471; 57 Tenn. 237; 65 Tex. 348; 34 Ind. 425; 66 Ala. 131; Payne on Elections, 856; Mc-Crary, Elections (4 Ed.), 369; 2 Dillon, Mun. Corp. (4 Ed.), § 892.

McCULLOCH, J. The petitioner, O. H. Sumpter, is contestee in an election contest instituted against him in the circuit court of Garland County by a rival candidate for the office of county and probate judge of that county at the general election held in September, 1906, and he presents to this court his petition for the writ of prohibition to prevent Hon. A. M. Duffie, the presiding judge of said circuit court, from assuming jurisdiction of the contest.

The statute provides that if the election of any county and probate judge shall be contested it shall be before the circuit court of the county. Act January 23, 1875, Kirby's Digest, § 5856. The petitioner contends that this statute is in conflict with the provisions of the Constitution of the State and void.

The Constitution contains the following provisions with reference to election contests:

"The general assembly shall provide by law the mode of contesting elections in cases not specificially provided for in this Constitution." Art. 19, § 24.

"That in all cases of contest for any county, township, or municipal office, an appeal shall lie, at the instance of the party aggrieved, from any inferior board, council, or tribunal to the circuit court, on the same terms and conditions on which appeals may be granted to the circuit court in other cases; and on such appeals the case shall be tried *de novo.*" Art. 7, § 52.

The only mode of contesting elections specifically provided for in the Constitution is for the offices of Governor, Secretary of State, Treasurer of ·State, Auditor of State and Attorney General. Art. 11, § 4. Learned counsel for petitioner argue that the section of the Constitution just quoted confers jurisdiction upon the circuit court, appellate only in character, to determine election contests for county offices; that the provision is exclusive, and forbids the exercise by that court of original jurisdiction. If this be true, it is, of course, beyond the power of the Legislature to confer original jurisdiction upon the circuit court in contests for such offices. But we do not think that ·the section in question was intended as a limitation upon the power of the Legislature to provide tribunals wherein election contests shall be determined.

The two sections on the subject which have been quoted must be read together in order to interpret their meaning. The first one, in the broadest terms, empowers the General Assembly to provide a mode of contesting elections in cases not specifically provided for in the Constitution itself. This has been construed to mean that a place as well as a manner of trial shall be provided. *Glidewell* v. *Martin,* 51 Ark. 559.

The other section provides that in all contests for county, township or municipal offices an appeal shall lie from any inferior board, council or tribunal to the circuit court. It can be construed to mean only that, if the Legislature shall provide an "inferior board, council or tribunal" as the place of contest for such offices, an appeal shall lie therefrom to the circuit court. It does not mean, as contended, that the Legislature can not authorize a trial in the first instance in the circuit court, but must provide an inferior tribunal for the original hearing. This is plain when we consider the use of the word "inferior." If that word had been omitted, there might be less certainty that the framers of the Constitution did not mean to provide for an appeal to the circuit court in all contests for such offices, thereby conferring appellate jurisdiction only upon the trial court. But the use of the word "inferior" makes it plain that a right of appeal to the circuit court was guarantied only from "any inferior board, council or tribunal" which the Legislature might create or empower to determine such contests.

Doubtless, the framers of the Constitution had in mind that, contests for county, township or muncipal offices being matters of local concern, the Legislature, in the exercise of the general power conferred to provide a place for such contests, would either empower the circuit court sitting in the county to determine them, or create local tribunals to determine them which would be inferior to the circuit court, and in the latter event intended by this section to provide in mandatory terms for appeals to the circuit court from the decisions of such inferior tribunals.

We need not consider what the effect would be if the Legislature should attempt to confer original jurisdiction to hear such contests upon some tribunal with territorial jurisdiction coextensive with the State or subdivision thereof greater than a county—whether or not such tribunal would be inferior to the court in the meaning of the section giving a right of appeal to that court. We have no such question before us. The section in question, however, manifestly contemplates the creation of some tribunal, not superior to the circuit courts, to try election contests for county offices.

It is settled by authority that election contests are not civil actions in the ordinary acceptation, but are special proceedings, and the framers of the Constitution manifestly deemed it necessary, in order to give the right of appeal from decisions of inferior tribunals, to expressly provide that appeals must be granted. *Davis* v. *Moore,* 70 Ark. 240; *Douglas* v. *Hutchinson,* 183 Ill. 323; *Williamson* v. *Lane,* 52 Tex. 335; *Knox* v. *Fesler,* 17 Ind. 254; *Patterson* v. *Murray,* 53 N. C. 278; *Reynolds, etc., Co.* v. *Police Jury.* 44 La. Ann. 863. This is, we think, all they intended by the incorporation of the section into the organic law. The position which this section occupies in the framework of the Constitution is not without some significance in determining the purpose which the lawmakers entertained when they incorporated it in the organic law of the State. It occupies a place in the article on the judicial department, and immediately follows a section declaring the right of appeal to the circuit court in all cases of allowances made for or against counties, cities or towns, and the language of the two sections is strikingly similar, both providing in substantially the same language that appeals shall lie to the circuit court at the instance of the party aggrieved

"on the same terms and conditions on which appeals may be granted to the circuit court in other cases," and that the case shall be tried in the circuit court *de novo.* Now, it can not be argued that the preceding section was intended to fix the original jurisdiction for the allowance of claims against counties, for that had already been specifically fixed in another section of the Constitution. Neither can it be successfully maintained that the section now under consideration negatived the power of the Legislature to confer upon the circuit courts original jurisdiction of election contests for county offices.

This court said in *State* v. *Martin,* 60 Ark. 343, that "the maxim *'expressio unius est exclusio alterius'* is not to be applied with the same rigor in construing a State Constitution as a statute; and that only those things expressed in such positive affirmative terms as plainly imply the negative of what is not mentioned will be considered as inhibiting the powers of the Legislature." In that case it was decided that the provision of the Constitution authorizing the election of a judge for each judicial circuit did not prohibit the Legislature from providing for the election of two judges for a circuit.

Chief Justice COCKRILL, in delivering the opinion of the court in Ex parte *Reynolds,* 52 Ark. 330, said: "It is essential in any case that a prohibition upon the powers of the Legislature should be certainly found in the Constitution to warrant the court in declaring a legislative act void; but where the act has long been acquiesced in by the legislative and judicial branches of the Government, the courts should be satisfied that it is repugnant, not only to the express and unequivocal terms of the instrument, but to its intent and reason, before resorting to their extraordinary power of nullification."

Another potent factor in reaching a conclusion as to the intention of the framers of the Constitution in inserting this section is the legislative construction thereof adopted almost contemporaneously with the adoption of the Constitution, and the early judicial acquiescence in that construction. This statute, authorizing the circuit court to exercise original jurisdiction in the trial of an election contest for the office of county and probate judge, was enacted on January 23, 1875, within a few months after the adoption of the Constitution by the General Assembly of which

there were many members who had been members of the recent constitutional convention, and who were elected at the same election at which the Constitution was adopted by the people.

The case of *Patton* v. *Coates,* 41 Ark. 111, which was decided less than ten years after the adoption of the Constitution, was a contest instituted in the circuit court of Pulaski County to contest the election of county and probate judge. The question of jurisdiction was not raised or discussed, though the case was reversed and remanded for a new trial, and the opinion of the court was written by Judge EAKIN, who sat in the constitutional convention, and who, according to the statement of Chief Justice ENGLISH (*State* v. *Devers,* 34 Ark. 195), drafted at least some of the provisions of the Constitution concerning the jurisdiction of the circuit court. "Such matters," said Chief Justice COCKRILL, in Ex parte *Reynolds, supra,* "are not entitled to controlling weight, for acquiescence for no length of time can legalize a clear usurpation of power; but when an examination of the Constitution leaves a doubt, the judges are warranted in looking to these extraneous matters for aid."

The cases of *Payne* v. *Rittman,* 66 Ark. 201, and *Whittaker* v. *Watson,* 68 Ark. 555, involved contests for the offices of marshal and mayor, respectively, of cities, and this court sustained the original jurisdiction of the circuit court to determine the contests. The statutes of the State do not name any tribunal for the trial of contests of elections for municipal offices, and the court in those cases based its decision sustaining the jurisdiction of the circuit court on the constitutional provision making that court the residuum of all unassigned original jurisdiction. The particular question now presented that section 52 of article 7 confers appellate jurisdiction only, and prohibits the exercise of original jurisdiction by the circuit court does not appear to have been raised or discussed in those cases, but the decisions themselves are necessarily in direct hostility to the contention against the power of the Legislature to confer original jurisdiction on the circuit court. These decisions stand as a barrier in the pathway of the petitioner, and we are asked to overrule them, but we decline to do so. We adhere to them in so far as they control the decision of the question we now have under consideration.

We are therefore of the opinion that the statute conferring

original jurisdiction upon the circuit court to hear and determine contests for the office of county and probate judge was valid; and that the circuit court of Garland County was correct in assuming jurisdiction of the contest set forth in the petition.

The prayer of the petition herein is denied, the temporary writ of prohibition issued here is dissolved, and the petition is dismissed at the cost of the petitioner.