## MITCHELL *v.* HOPPER.

### Opinion delivered May 15, 1922.

1. COURTS—ADOPTED CONSTRUCTION OF CONSTITUTIONAL PROVISION.—Const. 1874, art. 6, § 16, concerning the power of the Governor to veto concurrent orders or resolutions of the General Assembly, having been borrowed from Const. U. S., art. 1, § 7, the decisions of the Supreme Court of the United States with reference to the latter section apply with peculiar effect in interpreting the former section.

2. CONSTITUTIONAL LAW — PROPOSED AMENDMENTS — LEGISLATIVE POWER.—In proposing constitutional amendments under Const. 1874, art. 19, § 22, the General Assembly is not exercising its legislative power, but is acting in the capacity of a convention expressing the will of the sovereign people.

3. CONSTITUTIONAL LAW—LEGISLATIVE CONSTRUCTION.—Acts 1879, p. 128, § 3, (Crawford & Moses' Dig., § 1469), providing that the Governor may veto a concurrent resolution of the General Assembly submitting to the vote of the electors an amendment to the Constitution, is invalid as being in conflict with the Constitution.

4. CONSTITUTIONAL LAW—LEGISLATIVE CONSTRUCTION OF CONSTITUTION.—Legislative construction of constitutional provisions may be looked to by the courts only in cases of doubt as to their meaning.

5. CONSTITUTIONAL LAW—VETO OF RESOLUTION FOR AMENDMENT.—A concurrent resolution of both houses of the Legislature for submission of a constitutional amendment is not within the purview of art. 6, § 16, requiring the submission of orders and resolutions to the Governor before they shall take effect.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Chas. T. Coleman, T. M. Mehaffy, J. F. Loughborough* and *J. H. Carmichael,* for appellant.

Only three amendments may be submitted at an election. Art. 19, § 22, Constitution. The provision for

amendments is not self-executing, but needs legislation. 78 Ark. 468, 472; 106 Ark. 67.

That legislation was supplied by the act of 1879, which is found, with amendments, in chap. 33, C. & M. Digest, and chap. 32, Kirby's Digest. See §§ 1, 2, 3 and 4 of the original act, Acts 1879 p. 128. In conferring upon the Governor power to approve or disapprove resolutions for constitutional amendments, that Legislature, many members of which were also members of the Constitutional Convention, was carrying out what the framers of the Constitution understood to be its proper construction; and that act has been continuously in force since that time.

The exception of questions of adjournment in § 16 art. 6, Const., left no other exceptions from the provision that every order or resolution must be submitted to the Governor. 37 Ark. 374.

Adjudications in other States holding that the veto power under the particular Constitution considered did not apply to resolutions submitting constitutional amendments, but in each of them the provisions differed from ours in the matter of submitting amendments in this: It required as large a vote to pass the resolution submitting the amendment in the first place as it would take to pass the amendment over the veto of the executive. Moreover, in all these cases there was no mention of provisions for an amendment that were not self-executing, or of a Constitution where the construction by the legislative and executive branches had been uniform over a long period of time that approval or disapproval by the executive was necessary. See 3 Dall. 378; 101 Md. 117, 60 Atl. 540; 6 N. D. 81, 68 N. W. 418; 43 La. Ann. 655, 6 So. 798; 196 Pa. 396; 66 Cal. 632, 6 Pac. 734. The act of 1879 should be regarded as a contemporaneous construction of this Constitutional provision, in that it was passed at a time when it was desired to submit amendment number one, and should be given great weight on that account. 51 Ark. 559; 54 *Id.* 364, 370; 62 *Id.* 339.

The constitutionality of the act of 1879 has never been questioned by this court. On the contrary it has been upheld as necessary in carrying out § 22, art. 19 of the Constitution.   78 Ark. 472; 106 *Id.* 67.

Since the adoption of amendment No. 10 and the enabling act to carry it into effect, this court has always held that the enabling act was valid, and was necessary to carry it into effect.   See 106 Ark. 506; 117 *Id.* 465.

Every Legislature since the adoption of the Constitution, and all the executives likewise since that time, have construed it to mean that the Governor must approve a joint resolution submitting an amendment before it can be submitted to the people.   Black's Constitutional Law, 3rd. Ed. 51; *Id.* 326.

*J. S. Utley,* Attorney General, *Wm. T. Hammock,* and *Elbert Godwin,* Assistants, for appellee; *R. W. Robins, Geo. F. Hartje* and *J. C. Marshall,* of counsel.

There is no mention of any veto power on the part of the Governor appearing in art. 19, § 22, Constitution. His veto power is limited by art. 6, § 15 *Id.,* to *bills* which have passed both houses of the General Assembly, and does not extend to any kind of resolution. The requirement of art. 6, § 16, *Id.,* to the effect that orders and resolutions in which the concurrence of both houses may be necessary (except on questions of adjournment) shall be presented to the Governor, etc., does not embrace resolutions proposing amendments to the Constitution.

Art. 5, Constitution, U. S. is no more silent as to the power of the President over proposed Constitutional amendments than is art. 19, § 22, of our Constitution, while § 16, art. 6 of our Constitution it is patent was adopted from the later part of § 7, art. 1 of U. S. Constitution; yet it has been held that the President's approval of a resolution of Congress submitting an amendment to the Constitution was not necessary.   3 Dall. 378; 253 U. S. 229; 253 U. S. 232.   The Congress itself once voted that the sending of a resolution proposing an amendment

to the President was an inadvertent act and that his approval was unnecessary.  34 L. R. A. 97.

Section 22, art. 19, Constitution, nowhere hints at executive action, but on the contrary evinces a positive intention to send proposed amendments direct from the General Assembly to the Secretary of State for publication and submission, and a reading of that section will dispel any belief that § 16, art. 6, embraces resolutions proposing Constitutional amendments.  43 La. Ann. 655.

The General Assembly in proposing amendments to the Constitution does not act in its ordinary legislative capacity, but acts in the capacity of a convention expressing the supreme will of the people.  8 Ark. 445.  The Hartje resolution, therefore, is not a legislative matter, and was not subject to executive action. *Supra;* 49 Ark. 554; 140 *Id.* 493; 253 U. S. 350; 42 S. C. 217; 117 Ark. 582.  The Governor, in approving or disapproving bills or resolutions, is acting as a part of the legislative power and not as an executive.  The power of veto is inherently a legislative and not an executive power, and must be found in the Constitution as a part of the legislative power or it does not exist.  36 L. R. A. (N. S.) 244; 153 Pac. (Wash.) 594; 140 S. W. (Tex.) 405.  See also 72 Ark. 94.

On the proposition that the Governor has no power to veto resolutions proposing constitutional amendments see the following decisions from the various States:

Alabama: 87 So. 375; 24 Ala. 108.  California: 6 Pac. 734; 4 L. R. A. 429.  Colorado: 36 Pac. 221; 160 Pac. 1032.  Illinois: 281 Ill. 17.  Iowa: 14 N. W. 748. Kentucky: 47 S. W. 779.  Louisiana: 43 La. Ann. 647; 9 So. 776.  Maryland: 60 Atl. 538, 539.  Michigan: 115 N. W. 429, 446.  Missouri: 31 L. R. A. 815.  Nebraska: 41 N. W. 981.  Nevada: 12 Pac. 838.  North Dakota: 34 L. R. A. 97.  Pennsylvania: 196 Pa. 396, 50 L. R. A. 568. Tennessee: 122 Tenn. 471.  Wisconsin: 152 N. W. 419.

The rule that where a clause in a Constitution which has received a settled judicial construction is adopted in

the same words by the framers of another Constitution, it will be presumed that the construction thereof was likewise adopted, applies not only to adoption by one State from another, but also to the adoption in the same State of clauses or provisions in an older Constitution that have received judicial construction into a later Constitution.   Black, Constitutional Law, par. 43; 11 Ark. 594; 68 Id. 433; 78 Id. 346; 82 Id. 334; 96 Id. 316; 98 Id. 125; 104 Id. 417; 109 Id. 479; 113 Id. 552; 117 Id. 465; 120 Id. 389.

It is the duty of this court to construe the Constitution according to its terms and provisions whenever its construction is called for and without reference to the length of time others may have misconstrued it; nor is it in any manner bound by any such misconstruction. Where there is great doubt, legislative construction may be resorted to for aid, but even then it is not binding upon the courts.   85 Ark. 89, 94; 52 Id. 330; Cooley on Constitutional Limitations, 71.

SMITH, J.   Senate joint resolution No. 1, passed at the 1921 session of the General Assembly, proposed an amendment to the Constitution of the State.   The resolution was agreed to by a majority of all the members elected to each House, and this assent was regularly entered on the journals of the Senate and of the House. The resolution was transmitted to the Governor, and by him disapproved.   The General Assembly adjourned before the Governor acted on the resolution, and there was therefore no action by the General Assembly after the attempted veto.

Appellant, who is a citizen and taxpayer of the State, brought this suit to enjoin the Secretary of State from incurring the expense of publishing the proposed amendment and from submitting the same to the vote of the people.

In his answer the Secretary of State denied the authority of the Governor to veto a resolution of the General Assembly proposing an amendment to the Consti-

tution, and alleged that the Governor's attempt to do so was futile. The court below accepted that view and dismissed the complaint, and by this appeal we are asked to determine whether the Governor had that authority. No other question is presented.

Section 22 of article 19 of the Constitution reads as follows: "Either branch of the General Assembly at a regular session thereof may propose amendments to this Constitution, and, if the same be agreed to by a majority of all members elected to each House, such proposed amendments shall be entered on the journals with the yeas and nays, and published in at least one newspaper in each county where a newspaper is published, for six months immediately preceding the next general election for Senators and Representatives, at which time the same shall be submitted to the electors of the State for approval or rejection; and, if a majority of the electors voting at such election adopt such amendments, the same shall become a part of this Constitution; but no more than three amendments shall be proposed or submitted at the same time. They shall be so submitted as to enable the electors to vote on each amendment separately."

Article 19 is designated "Miscellaneous Provisions," and received this designation, no doubt, because of the variety of subjects covered by it. It is significant that the section quoted does not appear in article 5 of the Constitution, which deals with the legislative department. When analyzed, it appears that the constitutional requirements for amending the Constitution are that either house of the General Assembly may propose amendments if the proposed amendment is agreed to by a majority of all the members elected to each house.

The section on that subject is silent as to how the amendment may be proposed; but this is ordinarily done by resolution. The proposed amendment, in whatever manner offered, shall be entered on the journals with the yeas and nays, and, having received the requisite vote, it is then published and submitted to the electors

for approval or rejection, and, if a majority of the electors voting at such election adopt such amendment, the same becomes a part of the Constitution. It appears therefore that the General Assembly proposes, while the electors approve or reject. No mention of the Governor is made; and if there is any function for him to perform, other provisions of the Constitution must be looked to to ascertain what duty he is called upon to discharge.

Article 6 of the Constitution deals with the executive department of the Government, and section 15 thereof defines the veto power of the Governor. It reads as follows: "Every bill which shall have passed both houses of the General Assembly shall be presented to the Governor; if he approves it, he shall sign it; but if he shall not approve it, he shall return it, with his objections, to the house in which it originated, which house shall enter the objections at large upon their journal and proceed to reconsider it. If, after such reconsideration, a majority of the whole number elected to that house shall agree to pass the bill, it shall be sent with the objections to the other house, by which likewise it shall be reconsidered; and, if approved by a majority of the whole number elected to that house, it shall be a law; but in such cases the vote of both houses shall be determined by 'yeas and nays', and the names of the members voting for or against the bill shall be entered on the journals. If any bill shall not be returned by the Governor within five days, Sundays excepted, after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the General Assembly, by their adjournment, prevent its return, in which case it shall become a law, unless he shall file the same, with his objections, in the office of the Secretary of State and give notice thereof by public proclamation within twenty days after such adjournment."

It is quite obvious that this section has no relation to proposals for amending the Constitution. The veto power there referred to relates expressly and solely to

bills which become laws when approved by the Governor, or when retained by him without action beyond the time there limited for his action, or when passed by the two houses over his veto. It may be here noted that the vote essential to pass a bill over the Governor's veto—a majority of all the members elected to each house—is the vote required by section 22 of article 19 for proposing an amendment to the Constitution for the action of the electors.

We must therefore look further for some provision of the Constitution defining the duty of the Governor in regard to submitting amendments to the Constitution, if that instrument imposes any duty upon him. The only other provision of the Constitution which may, with any plausibility, be said to impose some duty on the Governor in this behalf is section 16 of article 6, which reads as follows: "Every order or resolution in which the concurrence of both houses of the General Assembly may be necessary, except on questions of adjournment, shall be presented to the Governor, and, before it shall take effect, be approved by him; or, being disapproved, shall be repassed by both houses, according to the rules and limitations prescribed in the case of a bill."

There is, however, a statute which does confer the veto power upon the Governor, of which we shall later have more to say. This is section 3 of an act approved April 2, 1879 (Acts 1879, p. 128), and appearing in C. & M. Digest as § 1469.

Article 5 of the Constitution of the United States deals with proposed amendments to that instrument. In that respect it corresponds to section 22 of article 19 of our Constitution. It imposes no duty upon the President in regard to such proposals.

The second paragraph of section 7 of article 1 of the Constitution of the United States deals with the President's power of veto. It is very similar to section 15 of article 6 of our Constitution dealing with the same subject. The principal point of difference is that a two-

thirds vote is required to pass a bill over the President's veto; whereas a majority of all the members elected to each house of the General Assembly suffices to pass a bill over the veto of the Governor. The phraseology and structural similarity between the two section is very striking.

The last paragraph of this section of the Federal Constitution is so nearly identical with section 16 of article 6 of our Constitution as to leave no doubt that our section is a borrowed one, taken almost literally from the Federal Constitution, except as to the vote required to pass an order or resolution over the veto of the President in the one case and that of the Governor in the other.

It also appears that the sections of the Federal Constitution above referred to have served as patterns for numerous other State Constitutions, the relevant portions of which are quoted in the brief of counsel for the State, and in numerous instances those sections have been copied into the Constitutions of other States as literally as is the case in our own Constitution.

Section 16 of article 6 of our Constitution, being, in effect and in fact, borrowed law, the decisions of the Supreme Court of the United States apply with peculiar effect in its interpretation, according to a well known canon of construction. *Hildreth* v. *Taylor,* 117 Ark. 465; *Hanson* v. *Hodges,* 109 Ark. 479.

In the case of *Hollingsworth* v. *Virginia,* 3 Dall. 378, the question was raised that the Eleventh Amendment to the Federal Constitution had not been properly submitted because the resolution of Congress proposing the amendment was never submitted to the President for his approval. Of that case the Supreme Court of the United States, in the case *Hawke* v. *Smith,* 253 U. S. 221, had this to say: "At an early day this court settled that the submission of a constitutional amendment did not require the action of the President. The question arose over the adoption of the Eleventh Amendment. *Hollings-*

*worth* v. *Virginia,* 3 Dall. 378. In that case it was contended that the amendment had not been proposed in the manner provided in the Constitution, as an inspection of the original roll showed that it had never been submited to the President for his approval in accordance with article 1, § 7, of the Constitution. The Attorney General answered that the case of amendments is a substantive act, unconnected with the ordinary business of legislation, and not within the policy or terms of the Constitution investing the President with a qualified negative on the acts and resolutions of Congress. In a foot-note to this argument of the Attorney General, Justice CHASE said: 'There can, surely, be no necessity to answer that argument. The negative of the President applies only to the ordinary cases of legislation. He has nothing to do with the proposition or adoption of amendments to the Constitution.' The court by a unanimous judgment held that the amendment was constitutionally adopted."

It appears that in only one instance has a proposed amendment to the Federal Constitution ever been submitted to the President for his approval, and some interesting history in regard to that occurrence is recited in the opinion of the Supreme Court of North Dakota in the case of *State ex rel. Wineman* v. *Dahl,* 34 L. R. A. 97, 6 N. D. 81, 68 N. W. 418, as follows: "The amendments (to the Federal Constitution) which were made in 1789, 1803, and 1866 were carried through without the action of the President. In 1865 the slavery amendments were inadvertently submitted to the Executive, and approved by him. On discovering this fact, Senator Trumbull of Illinois, chairman of the judiciary committee, introduced a resolution declaring its submission to him to have been an inadvertent act, and that his approval was unnecessary and of no effect. The resolution also asserted that that case should not constitute a precedent for the future. It was adopted without division."

Counsel for the Secretary of State cite the decisions of the courts of last resort of a number of States holding that the Governor has no function to perform in the matter of submitting constitutional amendments to the people for their action. There are points of similarity, and of difference as well, between the Constitutions of those States and the Constitution of our own which we will not stop to point out. A case typical of numerous others is that of *Warfield* v. *Vandiver,* 101 Maryland 78, 60 Atl. 538. This case is annotated in 4 A. & E. Ann. Cas. 692. The thought running through all these cases, and controlling in each of them, is that, in proposing amendments to the Constitution, the Legislature is not exercising its legislative power. We have been cited to no case holding to the contrary. The editor's note to the annotated case of *Warfield* v. *Vandiver, supra,* is that "the rule announced in the reported case, that proposed constitutional amendments need not be submitted to the Governor for his approval, has been followed by the courts of the various States apparently without dissent." (Citing numerous cases).

The decisions of this court accord with the rule announced in the note quoted. The decision of this court in the case of the *State* v. *Cox,* 8 Ark. 436, was handed down at a time when the General Assembly had the power to propose and to adopt amendments to the Constitution, but the court there said: "The General Assembly, in amending the Constitution, does not act in the exercise of its ordinary legislative authority of its general powers; but it possesses and acts in the character and capacity of a convention, and is, *quoad hoc,* a convention expressing the supreme will of the sovereign people, and is unlimited in its power save by the Constitution of the United States." In the recent case of *Whittemore* v. *Terral,* 140 Ark. 493, the court held that the action of the Legislature, pursuant to the power conferred by the Federal Constitution, ratifying a proposed amendment to that Constitution, was not the enactment of a law.

Much reliance is placed by counsel for appellant on the act of 1879 hereinabove referred to. It is pointed out that this act was passed at the session of the General Assembly which convened just five years after the adoption of the Constitution, and that seven members of this session of the General Assembly had been members of the Constitutional Convention. It is said, therefore, that great weight should be given to the construction which the General Assembly gave the Constitution by the passage of this act. It is also pointed out that the invariable custom since the adoption of the Constitution has been to submit to the Governor for his action all legislative proposals to amend the Constitution; and it is insisted that this long-continued and practical construction of the Constitution should be given great weight in its construction.

In answer to all this, it may first be said that the Constitution cannot be thus amended.

In reply to this practical construction of the Constitution which we are asked to follow, it is pointed out, through reference to the various published acts of the General Assembly, that, although section 16 of article 6 expressly excepts resolutions pertaining to adjournment from submission to the Governor, the practice has been to so submit them. Citation is also made to numerous non-legislative resolutions which have been customarily submitted to the Governor for his approval.

Further answering the argument in regard to the effect to be given to the construction of the Constitution by the General Assembly of 1879 by the passage of the act regulating the mode of proposing and voting upon amendments to the Constitution, and the acts of the officers of the State who have proceeded under that act, it is pointed out that the same General Assembly proposed the first amendment to the Constitution, and it did so in a resolution which has since been followed. It is as follows:

"Resolved, by the House of Representatives of the General Assembly of the State of Arkansas (a majority of all the members elected to each house agreeing thereto):

"That the following article shall be proposed as an amendment to the Constitution of the State of Arkansas, which, when agreed to by a majority of all the members elected to each house and adopted by a majority of the electors of the State voting at the next general election for Senators and Representatives, shall become a part of the said Constitution, namely:"

This resolution properly construes the Constitution and meets its requirements. It became a proposal when agreed to by a majority of all the members elected to each house of the General Assembly, and was to become a part of the Constitution if adopted by a majority of the electors of the State voting at the ensuing general election for Senators and Representatives.

The legislative act was ministerial. It authorized the submission of the proposal to the only body having authority to adopt or reject it. That was the electors voting at the next ensuing general election for Senators and Representatives. However, the insistence in regard to the effect to be given this act of 1879 as a practical construction of the Constitution by a Legislature composed in part of members who sat in the Constitutional Convention, may be disposed of here, as was a similar contention in the case of *Griffin* v. *Rhoton,* 85 Ark. 89, where it was said: "It is insisted that the first Legislature which convened after the adoption of the Constitution of 1874, and which was composed of many members of the convention who dominated its purposes, by passing a statute (act February 1, 1875) carrying out this provision as to other officers, construed it as not including the office of prosecuting attorney, and that we should follow that legislative construction. The rule permitting the consideration by the courts, in construing constitutional provisions, of legislative constructions of the same provisions has

been frequently approved by this court. *State* v. *Sorrels,* 15 Ark. 675; *Vahlberg* v. *Keaton,* 51 Ark. 534; *Ex parte Reynolds,* 52 Ark. 330; *Sumpter* v. *Duffie,* 80 Ark. 369. But, as was said by Chief Justice COCKRILL in *Ex parte Reynolds, supra,* such matters are not entitled to controlling weight. It is only when an examination of the Constitution leaves a doubt that the judges are warranted in looking to these extraneous matters for aid.''

It would be entirely superfluous to have the Governor to act in approving proposals for constitutional amendments. His action in so doing could not be anything more than a mere recommendation to the electors and would not render less necessary their approval at the ensuing election.

This quite obvious statement emphasizes the fact that the proposals for constitutional amendments are not within the purview of section 16 of article 6 of the Constitution, because the orders and resolutions there contemplated are those which ''shall take effect'' when approved by the Governor or, being disapproved, shall not take effect unless repassed by both houses according to the rules and limitations prescribed in the case of a bill.

This subject has been considered in opinions of such erudition that the temptation to quote from them is resisted only because of the great length to which it would protract this opinion. The reasoning of the Court of Appeals of Maryland in the case of *Warfield* v. *Vandiver, supra,* is in line with that of the numerous decisions from other States cited in the briefs of counsel, and we quote only a short excerpt from that opinion as follows: ''The people are the source of power. It is *they* who make and abrogate written Constitutions, and when in the organic law which they have chosen for themselves they have designated the General Assembly, consisting of a Senate and a House of Delegates, and nothing more, to be the agency for propounding amendments to the Constitution, no executive has the right to step in between that agency and the people themselves and to say that without

*his* approval *they* shall not be permitted to express *their* views on measures amendatory of the organic law. Unless the express language of the Constitution has unequivocally clothed the Governor with such an authority, in relation to proposed constitutional amendments, as is the case in Delaware, but in no other State, it cannot be borrowed from some other provision pertaining to a wholly different subject."

We conclude that the veto of the Governor was ineffective, and the decree of the court below dismissing appellant's complaint is affirmed.