(69 N. W. Rep. 5.)

---

## THE STATE EX. REL. J. B. WINEMAN *vs.* C. M. DAHL.

Opinion filed October 8, 1896.

**State Legislature—Joint Resolution.**

> The expression of the sovereign will of the legislature that a particular proposition or question be submitted to the people to be voted upon need not take the form of a law. It is sufficient if it be in the form of a joint resolution.

**Constitutional Convention.**

> Accordingly, *held*, that it is the duty of the secretary of state to certify to the county auditors of the various counties in the state a joint resolution passed by the legislature, that the question whether a constitutional convention should be held should be submitted to the people.

Mandamus, on the relation of J. B. Wineman, to compel C. M. Dahl, secretary of state, to certify to the county auditors of the various counties of the state a joint resolution passed by the legislature, that the question whether a constitutional convention shall be held shall be submitted to the people.

Peremptory writ granted.

*J. B. Wineman* and *Burke Corbet*, for relator.

*John F. Cowan, Atty. Gen'l*, for respondent.

CORLISS, J. An alternative writ of mandamus having been issued by this court in the exercise of its original jurisdiction, the defendant appeared and answered the writ. A demurrer having been interposed to such answer, the case presents to us only questions of law. The object of this proceeding is to compel the defendant, as secretary of state, to certify to the county auditor of each county a certain joint resolution adopted at the last session of the legislature. It is in the following words: "Concur-

rent Resolution.    Be it resolved  by the house of representatives
of the State of North Dakota, the senate concurring therein, that,
in the opinion of the legislative assembly, the best interests of
the state require that a constitutional convention be called at
some future date, for the purposing of revising the constitution.
Therefore, it is hereby recommended to the electors of the state
of North Dakota that at the next general election, to be held on
the first Tuesday after the first Monday in November, 1896, that
they vote for or against a convention to revise the constitution of
the state." Section 83 of the constitution declares that the
powers and duties of the secretary of state shall be as prescribed
by law.    One of these duties is to certify to the county auditors
propositions or other questions to be submitted to the people.
Rev. Codes, §§ 491, 509.    It is obvious that the body which is
vested with power to designate the question to be submitted to
the people is the legislature.   This proposition is not contro-
verted; nor is it disputed that that body has expressed its will
that there should be submitted to the people the question
whether a constitutional convention should be called to revise the
constitution.    But it is insisted that this expression of sovereign
will is not in constitutional form, and is therefore without legal
effect.    That it did not take the form of an ordinary law is too
clear for controversy.   The joint resolution has no title.   Its
enacting clause is not couched in the language prescribed by the
constitution to be employed in the enactment of ordinary laws;
nor was it ever submitted to the governor for approval.    When-
ever it is necessary that the expression of sovereign will should
take the form of ordinary legislation, these requirements must be
strictly observed.    But, in declaring its purpose that a specific
proposition should be submitted to the people for their approval
or disapproval, the legislature is not discharging the ordinary
function of enacting laws.   In cases of this kind it has been the
established usage to employ a joint resolution as the mode of
expressing sovereign pleasure.   There is nothing in our constitu-
tion indicating a purpose to abrogate this settled practice.    It is

a simple and very satisfactory form in which to embody the will of sovereign power; and there is nothing in the nature of such an expression of legislative purpose which renders it necessary that the checks and safeguards which surround ordinary legislation should be applicable in cases of this character. No permanent general rule is thereby established. The whole force of the resolution is spent upon those officers whose duties it is to see that the proposition therein specified is submitted to the people. When they have performed their duty, there is nothing left but a mere recommendation to the people to express their views on the particular question submitted, to the end that the verdict of the public upon that proposition may furnish a guide to future legislative action. It is not the resolution in this case which imposes any duty on the secretary of state. The duty he is required by this court to perform is imposed upon him by a law passed with all the formalities and solemnities essential to a valid enactment. That law declares that he must certify to the county auditors such question or proposition as is to be submitted to the people; and the body which has power to designate the proposition or question to be submitted is, as we have already asserted, the body which inheres sovereignty. By the joint resolution, that body has designated the question to be submitted, and the law prescribes what the secretary of state shall do towards carrying out its legally expressed will.

There is eminent authority for the proposition that it is not necessary that the legislative will that the constitution should be amended should assume the form of an ordinary law, and be submitted to the executive for approval. This was held by the Federal Supreme Court in *Hollingsworth* v. *Virginia*, 3 Dall. 378. The argument in support of the proposition that the president must approve a proposed amendment to the federal constitution is much stronger than the argument in this case that the governor must approve the action of the legislature in declaring that a particular question shall be submitted to the people. The federal constitution (Art. 1, § 7) provides that "every order, resolution

or vote to which the concurrence of the senate and house of representatives may be necesssay shall be presented to the president of the United States." etc. Yet, despite this provision of the constitution, the court ruled that the eleventh amendment had been lawfully adopted, although the resolution embodying the amendment had not been submitted to the president for approval. This was in 1794. The amendments which were made in 1789, 1803, and 1866 were carried through without the action of the president. In 1865 the slavery amendments were inadvertently submitted to the executive, and approved by him. On discovering this fact, Senator Trumbull, of Illinois, chairman of the judiciary committee, introduced a resolution declaring its submission to him to have been an inadvertent act, and that his approval was unnecessary and of no effect. . The resolution also asserted that that case should not constitute a precedent for the future. It was adopted without division. But it is unnecessary to pursue this line of discussion any further. Under many state constitutions containing provisions with regard to the enactment of statutes similar to those found in the organic law of this state, it has been, and is, customary to express by joint resolution the will of the legislature on matters not falling within the category of ordinary legislation. Such course has not, so far as we have been able to discover, ever been successfully challenged as being repugnant to the supreme law. Our constitution plainly recognizes the legality of the expression of sovereign will by joint resolution. See § 66. This section declares that the presiding officer of each house shall sign all bills and joint resolutions. We do not think that it was the purpose of the people to interfere with this settled and convenient usage of expressing sovereign pleasure by joint resolution in all cases not falling within the domain of ordinary legislation. We cannot bring ourselves to believe that they intended to require all the forms and procedure essential to a . valid law, in cases where the legislature merely desires to express its wish that the people would at the polls inform their servants of their sentiment touching some question of public interest.

Whether aught will come of an affirmative vote on this question is immaterial. It is no concern of the secretary of state whether it is wise or unwise to submit to the people the proposition speci-fied in the resolution,—whether it will lead to practical results or be only an idle form. The sovereignty of the people, speaking through its representatives, is the final judge whether the sense of the people on a grave issue shall be taken at the polls. The secretary of state has naught to do but obey the law, and certify such question to the proper officers, that it may be submitted to the people for their approval or disapproval.

Nor can it be said that it is an empty form to leave to popular vote the grave question whether the people shall assemble in convention, and revise their fundamental law. True it is that the power to take the initiative with respect to the calling of a con-stitutional convention resides in the legislature. In the absence of any provision in the constitution on the subject, that body alone can give legality to such a convention. If its foundation is in the spontaneous action of the people, without permissive legislative authority, the movement is revolutionary, although no blood be spilled or violence accompany the rising of the people to assert their reserve power of revolution. There was a time in the earlier history of this country when in certain quarters the view was entertained that the people could legally assemble in convention, and revise their constitution, without the sanction of legislative action. See James. Const. Conv. pp. 383-387, 663-666. But this opinion no longer prevails. James. Const. Conv. § § 219, 394-403, 570, 571, 574h. Judge Jameson says: "The making of provision for the assembling of conventions, and the hedging of them about with the restrictions needed, as well for their efficiency as for the safety of the commonwealth, is emphatically a matter of legislation. It is, moreover a matter of legislation not fundamental in character, but of that species which our con-stitutions apportion exclusively to the legislative departments created by them. The legislation necessary to initiate and to temper the operations of a convention no department of the

government is competent to effect but the legislature. The sovereign itself could not do it, nor the electors,—bodies whose organization is such as to make deliberation upon the details of laws impossible. Nor is it true, as intimated by the judges in the opinion, that the giving to the legislature, in a constitution, express power to recommend specific amendments to that instrument, involves, by implication, the denial to that body of power to call conventions for a general revision of it. We shall see in a subsequent part of this work that such a grant is applicable only to disconnected and unimportant amendments. It is obvious that a grant of power to propose such amendments in a summary manner, and without the formalities ordinarily attending the enactment of fundamental laws, cannot be considered as an implied prohibition to effect a general revision of a constitution in the only appropriate and practicable way,—by a convention. If it be not in the power of a legislature to call a convention, that fact is not to be inferred from the positive authority to affect a different object in a different way." But while the power resides in the legislature, and that body only, to call a constitutional convention, it is obvious that the agents of the people, who have not been selected on that particular issue, should not take upon themselves the responsibility of burdening the people with the expense of such a movement, without first submitting to them the question whether they desire such a convention to be called. The argument against the taking of the initiative by the legislature in such cases, without first ascertaining public sentiment on the question, is so strong, and lies so plainly on the surface, that in many states the constitution, in terms, requires the submission of the proposition to popular vote, and a majority vote in its favor, before the legislature can legally summon the people to meet in convention to revise their organic law. See James. Const. Conv. pp. 669-671. In 1820 the council of the revision of New York returned to the assembly a bill calling a constitutional convention, with objections to its passage. The ground of these objections was the fact that the legislature had not taken the

sense of the people on the subject. In those objections the conclusion of the council was stated in the following language: "The council therefore think it the most wise and safe course, and most accordant with the performance of the great trust committed to the representative powers under the constitution, that the question of a general revision of it should be submitted to the people in the first instance, to determine whether a convention ought to be convened. The declared sense of the American people throughout the United States on this very point cannot but be received with great respect and reverence; and it appears to be the almost universal will, expressed in their constitutional charters, that conventions to alter the constitution shall not be called at the instance of the legislature without the previous sanction of the people, by whom those constitutions were ordained." It was therefore a very proper step for the legislature to take to declare that the people should be allowed to be heard on this question before final legislative action.

It is unnecessary for us to express any opinion on the question whether § 202 of the constitution, prescribing the mode of amending the same, prevents the lawful assembling of a constitutional convention in this state to revise the fundamental law. The decided weight of authority and the more numerous precedents are arrayed on the side of the doctrine which supports the existence of this inherent legislative power to call a constitutional convention, notwithstanding the fact that the instrument itself points out how it may be amended. See James. Const. Conv. § § 570-574d. But see *In re Constitutional Convention*, 14 R. I. 649. Opinion of Justices of Supreme Court, 6 Cush. 573.

The peremptory writ will issue as prayed for. All concur.