Jim GERINGER, as the Governor of the
State of Wyoming, Appellant
(Plaintiff),

v.

Eli D. BEBOUT, as the Speaker of the
Wyoming House of Representatives; Jim
Twiford, as President of the Wyoming
Senate; and the Members of the Fifty–
Fifth Legislature of the State of Wyo-
ming, Appellees (Defendants).

No. 00–168.

Supreme Court of Wyoming.

Aug. 14, 2000.

Representing Appellant: Gay Woodhouse, Attorney General, and Michael L. Hubbard, Deputy Attorney General.

Representing Appellee: James L. Applegate and Misha Westby of Hirst & Applegate, Cheyenne, Wyoming; and Rex O. Arney and Scott Klosterman of Brown, Drew & Massey, LLP, Casper, Wyoming.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL & KITE, JJ.

HILL, Justice.

In this appeal we are called upon to resolve a dispute between the Governor of the State of Wyoming, Jim Geringer, and the Wyoming Legislature and its members and leadership. On May 15, 2000, the Governor filed a complaint for declaratory judgment, seeking judicial review of procedures employed by the Legislature in proposing amendments to the Wyoming Constitution during its year 2000 session. A joint motion to certify the matter here, pursuant to W.R.A.P. 11, was filed in the district court, and by order entered on June 22, 2000, the district court granted that motion. The case was docketed here on June 30, 2000. In accordance with W.R.A.P. 7.06(d), an abbreviated briefing schedule was agreed to by the parties, and opening briefs were filed on July 10, 2000, followed by reply briefs filed on July 17, 2000. The Court considered the matter at its weekly conference on July 18, 2000, and by order entered on July 19, 2000,

the case was assigned to the expedited docket, with a goal of completing resolution of the certified question before the August 15, 2000 deadline for ballot preparation for the 2000 General Election.

## THE CERTIFIED QUESTION

The question we have agreed to answer is phrased thus:

I. Does the Wyoming Constitution require the presentment to the Governor of a joint resolution proposing a constitutional amendment for his approval or disapproval before it can take effect and before the proposed constitutional amendment can be placed on the ballot?

We will answer the certified question in the affirmative, and hold that the Wyoming Constitution mandates that the Legislature present proposed constitutional amendments to the Governor for approval or disapproval, before they may appear on the ballot in a General Election

## SUMMARY OF THE ISSUE

In its 2000 Budget Session, the Legislature enacted a joint resolution to amend Art. 4, § 9, of the Wyoming Constitution which would have the effect of diminishing the line-item veto authority of the Governor. Lest any confusion seep into the task at hand, that the Legislature was intent on trimming the veto power of the Governor is not the source of the conflict we are called upon to resolve. Rather, it was a change to the rules under which the Legislature governs its procedures with respect to proposal of amendments to the Wyoming Constitution that brings this controversy to the door of the Judicial Branch of government. The change in those procedures was dramatic and operated in a manner so as to sweep away over one hundred years of practice and tradition. Since the establishment of Statehood in 1890, the Legislature has followed a practice of presenting to the Governor, for his approval or disapproval, all proposed amendments to the Wyoming Constitution. If the Governor disapproved, the Legislature, of course, had the option of overriding the Governor's veto. If the Governor approved, the proposed consti-

tutional amendment would then be forwarded by the Legislature, to the Secretary of State, so that the amendment could be placed on the ballot for the next General Election.

## FACTS

The certified question comes to us with a stipulation as to the facts, which are viewed by the parties as pertinent to resolution of this matter:

## STIPULATION OF FACTS

The Plaintiff and Defendants in the above-entitled matter stipulate to the following facts:

1. The historical records of the Wyoming Legislature show that from 1899 through 1999, 118 proposed constitutional amendments have been passed by the House and the Senate and 116 of those have been presented to the Governor. Certified copies of these proposed amendments are attached as and marked as "Exhibit 1 thru Exhibit 118."

2. Two of these proposed amendments (Exhibits 71 and 117) were rescinded or repealed (Exhibits 78 and 119) by the Legislature. Two of these proposed amendments were vetoed by Governor Nels Smith in 1941 (Exhibit 30) and by Governor Lester Hunt in 1947 (Exhibit 39). In 1941, Governor Nels H. Smith disapproved Enrolled Joint Resolution No. 3 proposing to amend Art. III, § 22 of the Wyoming Constitution attached as Exhibit 127. Governor Lester C. Hunt, in 1947, disapproved or vetoed Enrolled Joint Resolution No. 2 proposing to amend Art. XVI, § 11 of the Wyoming Constitution attached as Exhibit 128.

3. Three Joint Resolutions for proposed constitutional amendments were not presented to Governor Geringer but were delivered directly to the Secretary of State. (Exhibits 117,118 and 120)

4. Senate Enrolled Joint Resolution No. 1 of the 2000 Budget Session of the 55th Legislature (Exhibit 120) is one of three proposed joint resolutions for constitutional amendment enacted by any Wyoming Legislature in its 110 year history that have not been presented to the Governor for approval or disapproval. The other two joint resolutions for proposed constitutional amendments were enacted by the 55th Legislature in 1999, regarding military eligibility. (Exhibits 117 and 118)

5. On February 11, 1998, the Wyoming Supreme Court in *Management Council of the Wyoming Legislature v. Geringer,* 953 P.2d 839 (Wyo.1998), ruled that the partial veto authority (line-item veto authority) of the Governor conferred by Article 4, Section 9 of the Wyoming Constitution applied to any portion of any bill making appropriations, including substantive provisions that do not appropriate money.

6. During the 1998 Budget Session of the Wyoming Legislature, "House Joint Resolution No. HJ0010" (Exhibit 121) was introduced proposing to amend Art. IV, § 9 of the Wyoming Constitution to limit the Governor's partial veto authority (line-item veto authority) to general appropriations bills and to appropriations items within those bills.

7. House Joint Resolution No. HJ0010, referred to in paragraph 6 above, was enacted by the House of Representatives and the Senate and became "House Enrolled Joint Resolution No. 1." (Exhibit 116).

8. House Enrolled Joint Resolution No. 1, (Exhibit 116) referred to in paragraph 7 above, was signed by the Speaker of the House and the President of the Senate and was presented to the Governor for his approval or disapproval. The Governor vetoed House Enrolled Joint Resolution No. 1 on 12 March 1998. An attempted legislative override of the veto was unsuccessful.

9. The Rules of the Second Legislature of the State of Wyoming in 1893 contained the following provision at Joint Rule # 8 (see RULES OF THE HOUSE OF REPRESENTATIVES TOGETHER WITH THE JOINT RULES AND THE STANDING COMMITTEES OF THE HOUSE, THE REPUBLICAN BOOK AND JOB PRINT, 1893, P. 18):

When a bill, joint resolution or memorial shall have been signed, the chief clerk shall endorse on the back thereof a certificate

specifying in which House the same originated. It shall then be presented by the enrolling committee of the House in which the same originated to the Governor of the State for his approval. After having performed said duty, the committee shall report to the House in which the paper originated, the day and hour of presentation to the Governor, which facts shall be entered upon the journal of said House. Said committee is further empowered to report at any time to either House any matter committed to it.

The same rule is found in Joint Rules of the Fourth State Legislature (1897); the Fifth State Legislature (1899); the Eleventh State Legislature (1911); the Twelfth State Legislature (1913). Similar language is also found in the Joint Rules of the Fifteenth State Legislature (1919); the Sixteenth State Legislature (1921); Eighteenth State Legislature (1925); Nineteenth State Legislature (1927); the Twentieth State Legislature (1929); Twenty-first State Legislature (1931.); Twenty-second State Legislature (1933); the Twenty-fourth Legislature (1937); and all legislatures from 1939 through 1969.

10. The Rules of the 49th (1987–88), 50th (1989–90), 51st (1991–92), 52nd (1993–94), 53rd (1995–96) and the 54th (1997–98) Legislatures, with regard to presentment to the Governor, provided as follows:

### Joint Rules § 4–3
#### *ENROLLED ACT SIGNING*

"4–3 When enrolled acts are presented to the presiding officer for signing, they shall be the first order of business after the current order and be signed immediately after their titles have been publicly read and the fact of signing shall be at once entered in the journal. When both presiding officers have so signed, the messenger shall present the act to the governor for approval and exchange the act for a signed receipt which gives the day and hour of presentation to the governor."

11. However, in January 1999, the House and the Senate of the Defendant 55th (1999–2000) Legislature of the State

of Wyoming adopted the following rules regarding presentment:

Amend JOINT RULE 4–3 and create new Joint Rules 4–4 and 4–5 as follows:

### ENROLLED ACT SIGNING

4–3 When enrolled acts are presented to the presiding officer for signing, they shall be the first order of business after the current order and be signed immediately after their titles have been publicly read and the fact of signing shall be entered in the journal. (Ref: Mason's §§ 738, 739).

### *PRESENTMENT TO GOVERNOR*

*4–4 When both presiding officers have signed an enrolled act, except for an act proposing an amendment to the Wyoming Constitution, the messenger shall present the act to the governor for approval and exchange the act for a signed receipt which gives the day and hour of presentation to the governor.* (Ref. Mason's §§ 740)

### *PROPOSED CONSTITUTIONAL AMENDMENTS, DELIVERY TO SECRETARY OF STATE*

*4–5 When both presiding officers have signed an enrolled act proposing an amendment to the Wyoming Constitution, the messenger shall deliver the act to the secretary of state and exchange the act for a signed receipt which gives the day and hour of delivery to the secretary of state.*

12. During the 1999 General Session of the Wyoming Legislature "House Joint Resolution No. HJ0006" (Exhibit 122) was introduced proposing to amend Art. IV, § 9 of the Wyoming Constitution to limit the Governor's partial veto authority (line-item veto authority) to general appropriations bills and to appropriations items within those bills. This bill did not pass the house of origin.

13. During the … General Session of the 55th Wyoming Legislature "Senate Enrolled Joint. Resolution No. 2" (Exhibit 117) and "Senate Enrolled Joint Resolution No. 3" (Exhibit 118) were signed by the Speaker of the House and the President of the Senate and both Enrolled Joint Reso-

lutions were delivered directly to the Secretary of State without presentation to the Governor.

14. During the 2000 Budget Session of the Wyoming Legislature "Senate Joint Resolution No. SJO001" (Exhibit 123) was introduced proposing to amend Art. IV, § 9 of the Wyoming Constitution to limit the Governor's partial veto authority (line-item veto authority) to general appropriations bills enacted pursuant to Art. III, § 34 of the Wyoming Constitution. Senate Joint Resolution No. SJO001 was enacted by the House of Representatives and the Senate.

15. Senate Joint Resolution No. SJO001 became "Enrolled Joint Resolution No. 1, Senate" (Exhibit 120) of the Budget Session of the Fifty-fifth Legislature of the State of Wyoming. A copy of the Legislative Journal entry showing the votes taken on Senate Joint Resolution No. SJO001 is attached as Exhibit 135. Senate Enrolled Joint Resolution No. 1 was signed by Defendant Bebout, as Speaker of the House, and also signed by Defendant Twiford, as President of the Senate. Senate Enrolled Joint Resolution No. 1 contained the customary signature line for the Governor, but was not presented to the Governor for his approval or disapproval.

16. Senate Enrolled Joint Resolution No. 1 (Exhibit 120) of the 2000 Budget Session was delivered directly to the Secretary of State, without presentation to the Governor. The joint resolution was received by the Secretary of State on 6 March 2000.

17. The only other joint resolution for a proposed constitutional amendment enacted by the Fifty-fifth Legislature during the 2000 Budget Session was "House Joint Resolution No. HJ0001" (Exhibit 124) regarding a proposed constitutional amendment to military eligibility. This became "House Enrolled Joint Resolution No. 1" (Exhibit 119) and was presented to the Governor on 13 March 2000. This joint resolution was signed on 13 March 2000 by the Governor and filed with the Secretary of State. The Chief Clerks of both the House and the Senate on 13 March 2000

sent letters (Exhibits 125 and 126) to the Governor informing him that the presentation of House Enrolled Joint Resolution No. 1 to him had been in error according to Joint Rule 4–5 of the 55th Legislature.

18. In 1998, Governor Geringer became the third Wyoming Governor to veto a joint resolution for a constitutional amendment when he vetoed House Enrolled Joint Resolution No. 1 (Exhibit 116) on 12 March 1998. A copy of Governor Geringer's veto message is attached as "Exhibit 129." The House of Representatives of the Fifty-fourth Wyoming State Legislature, Special Session, attempted to override the veto. The unsuccessful override vote is represented by "Exhibit 130" which is attached.

19. After the 1998 Session of the Legislature adjourned, there was discussion among legislative leaders about the process of amending the Wyoming Constitution. A legal research memo prepared by Legislative Service Office Staff Attorney McMullen on 1 May 1998 (Exhibit 131) was presented to the Legislative Management Council at meetings in September and December 1998 and discussions thereon resulted in the proposal to the 55th Legislature to adopt new rules in January 1999 relating to "Enrolled Act Signing," "Presentment to Governor," and "Proposed Constitutional Amendments; Delivery to Secretary of State" detailed in ¶ 11 of this Stipulation.

20. THE EMPLOYEE'S MANUAL OF PROCEDURES AND DUTIES OF THE WYOMING STATE LEGISLATURE, HOUSE OF REPRESENTATIVES (1st Revision 1960) provides the following drafting rules for "resolutions" at page 5:

Resolutions:

1. Expressions of the opinion or sentiment of the legislature.

a. The only way in which State Constitutional amendments may be referred to the electorate.

2. Do not have the force of law, but legislative procedure is the same as with bills. (Emphasis added.) The same language is found in the 1957 first printing of

the EMPLOYEE'S MANUAL OF PROCEDURES AND DUTIES, at page 5.

21. In 1991, WYOMING MANUAL OF LEGISLATIVE PROCEDURE, WYOMING STATE LEGISLATURE at pages 4 and 5 (Exhibit 132) describes the "Form of Measures" including "Joint Resolutions" as:

This is the form in which state constitutional amendments may be proposed and referred to the voters. See Article 20, Wyoming Constitution, and W.S. 22–20–101 through 22–20–109. Passage requires a two-thirds majority vote of both bodies. Also, it is the only form in which amendments to the United States Constitution are ratified by the legislature. See Article V, United States Constitution. Passage requires a majority vote of both bodies.

22. This foregoing provision of the 1991 Manual of Legislative Procedure was deleted when the Manual was revised in 1994 and again in 1999. The only reference in either the 1994 Manual (Exhibit 133) or in the 1999 Manual (Exhibit 134) is contained in Appendix I, Legislative Vote Requirements, under the list of actions requiring a two-thirds vote of elected members.

23. The 1996 Legislative Handbook prepared by the Wyoming Legislative Service Office at Chapter IV Bill/Amendment Drafting contains a description of "Resolutions" including Resolutions proposing amendments to the Wyoming Constitution. (Exhibit 136)

24. Article 3, Section 20 of the Wyoming Constitution provides:

§ 20. Laws to be passed by bill; alteration or amendment of bills.

No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either house as to change its original purpose.

25. Article 3, Section 28 of the Wyoming Constitution provides:

§ 28. Signing of Bills.

The presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the legislature immediately after their titles have been publicly read, and the fact of signing shall be at once entered upon the journal.

26. Article 3, Section 41 of the Wyoming Constitution provides:

41. Resolutions; approval or veto.

Every order, resolution or vote, in which the concurrence of both houses may be necessary, except on the question of adjournment, or relating solely to the transaction of business of the two houses, shall be presented to the governor, and before it shall take effect be approved by him, or being disapproved, be repassed by two-thirds of both houses as prescribed in the case of a bill.

27. Article 4, Section 8 of the Wyoming Constitution provides:

§ 8. Approval or veto of legislation by Governor; passage over veto.

Every bill which has passed the legislature shall, before it becomes law, be presented to the governor. If he approve, he shall sign it; but if not, he shall return it with his objections to the house in which it originated, which shall enter the objections at large upon the journal and proceed to reconsider it. If, after such reconsideration, two-thirds of the members elected agree to pass the bill, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if it be approved by two-thirds of the members elected, it shall become a law; but in all such cases the vote of both houses shall be determined by the yeas and nays, and the names of the members voting for and against the bill shall be entered upon the journal of each house respectively. If any bill is not returned by the governor within three days (Sundays excepted) after its presentation to him, the same shall be a law, unless the legislature by its adjournment, prevent its return, in which case it shall be a law, unless he shall file the same with his objections in the office of the secretary of state within fifteen days after such adjournment.

28. Article 4, Section 9 of the Wyoming Constitution provides:

§ 9. Veto of items of appropriations.

The governor shall have power to disapprove of any item or items or part or parts of any bill making appropriations of money or property embracing distinct items, and the part or parts of the bill approved shall be the law, and the item or items and part or parts disapproved shall be void unless enacted in the following manner: If the legislature be in session he shall transmit to the house in which the bill originated a copy of the item or items or part or parts thereof disapproved, together with his objections thereto, and the items or parts objected to shall be separately reconsidered, and each item or part shall then take the same course as is prescribed for the passage of bills over the executive veto.

29. Article 20, Section 1 of the Wyoming Constitution provides:

§ 1. How amendments proposed by legislature and submitted to people.

Any amendment or amendments to this constitution may be proposed in either branch of the legislature, and, if the same shall be agreed to by two-thirds of all the members of each of the two houses, voting separately, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered on their journals, and it shall be the duty of the legislature to submit such amendment or amendments to the electors of the state at the next general election, and cause the same to be published without delay for at least twelve (12) consecutive weeks, prior to said election, in at least one newspaper of general circulation, published in each county, and if a majority of the electors shall ratify the same, such amendment or amendments shall become a part of this constitution.

30. Time is of the essence in this case since the proposed constitutional amendment at issue is scheduled to be placed on the 2000 ballot. The Secretary of State must publish proposed Constitutional amendments on August 15 and prepare the form of the ballot in early September prior to the November 2000 general election.

31. The exhibits identified above are hereby offered into evidence without objection from either party. All exhibits to be made part of the official record in this case.

## DISCUSSION

 In its excellent briefing, the Legislature urges this Court to consider the language in Art. 20, § 1 of the Wyoming Constitution as determinative of the issue, without reference to any other provision or provisions of the constitution. Art. 20, § 1 provides:

§ 1. How amendments proposed by legislature and submitted to [the] people.

Any amendment or amendments to this constitution may be proposed in either branch of the legislature, and, if the same shall be agreed to by two-thirds of all the members of each of the two houses, voting separately, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered on their journals, and it shall be the duty of the legislature to submit such amendment or amendments to the electors of the state at the next general election, and cause the same to be published without delay for at least twelve (12) consecutive weeks, prior to said election, in at least one newspaper of general circulation, published in each county, and if a majority of the electors shall ratify the same, such amendment or amendments shall become a part of this constitution.

The essence of the Legislature's contention is that because Art. 20, § 1, makes no mention of submitting a proposed constitutional amendment to the Governor for approval or disapproval, no such requirement can be deemed to exist. This contention does not comport with a long-standing principle used by this Court in construing our state constitution. Our cases explain that every statement in the constitution must be interpreted in light of the entire document, rather than as a series of sequestered pronouncements, and that the constitution should not be interpreted to render any portion of it meaningless, with all portions of it read in pari materia and every word, clause and sentence considered so that no part will be inoperative or superfluous. *Management Council*

of the Wyoming Legislature v. Jim Geringer, Governor of the State of Wyoming, 953 P.2d 839, 845 (Wyo.1998); County Court Judges Ass'n v. Sidi, 752 P.2d 960, 964 (Wyo.1988); Thomson v. Wyoming In-Stream Flow Committee, 651 P.2d 778, 790 (Wyo.1982); Bower v. Big Horn Canal Ass'n, 77 Wyo. 80, 307 P.2d 593, 597 (1957); Grand Island & N.W.R. Co. v. Baker, 6 Wyo. 369, 45 P. 494, 498 (1896).

 In contrast, in equally strong briefing, the Governor urges that Art. 20, § 1, be read together with Art. 3, § 41, which provides:

§ 41. Resolutions; approval or veto.

Every order, resolution or vote, in which the concurrence of both houses may be necessary, except on the question of adjournment, or relating solely to the transaction of the business of the two houses, shall be presented to the governor, and before it shall take effect be approved by him, or, being disapproved, be repassed by two-thirds of both houses as prescribed in the case of a bill.[1]

The Governor contends that a measure proposing an amendment to the constitution requires a vote of both houses of the Legislature and, therefore, Art. 3, § 41, requires that every such measure be presented to his office for approval or disapproval. We agree with that reasoning. When the two constitutional provisions set out above are read together, it is plainly declared that legislative measures, however denominated, which propose an amendment to the constitution, must be presented to the Governor for approval or disapproval. The language of Art. 3, § 41 is broad and inclusive, using the words "every order, resolution or vote." We are confident that this language encompasses a vote to propose a constitutional amendment.[2] Where we find the language of the constitution to be plain and unambiguous, and thus the intent of the framers' and of those who adopted the constitution is clear, we need not employ principles of construction to ascertain the constitution's intended meaning. Management Council, 953 P.2d at 843. The Legislature's contention that Art. 20, § 1, should not be read in light of Art. 3, § 41, because of the language contained in that later provision, "before it shall take effect," is also unavailing. Summarized, that contention asks us to conclude that a proposed constitutional amendment cannot and does not "take effect" as a result of the Legislature's vote, but only "takes effect" upon a vote of the people. We are not persuaded by that reasoning either. The thrust of legislative action with respect to constitutional amendments "takes effect," and is complete, when a proposed amendment is submitted to the secretary of state for inclusion in the next General Election ballot. All that remains to be done is a vote of people of the State of Wyoming and the ministerial act of the governor issuing a proclamation, if the amendment passes. Wyo. Stat. Ann. § 22–20–108 (LEXIS 1999). Before such legislative action "takes effect" as outlined above, approval by the governor, or an override of disapproval, is mandated.

 Even if we concluded that the constitutional language was ambiguous, our analysis would lead to the same result. To resolve the ambiguity, we look to the legislative history, and we clearly see that every legislature since statehood has interpreted this provision of the Constitution as we do, including those convening immediately upon adoption of the Constitution. The Legislature implicitly maintains that the procedures it used in the more than 100 years that preceded the amendment of its internal operating rules in 1999, were mistaken, voluntary or merely deferential. But we have said that "[w]e are not at liberty to presume that the framers of the constitution, or the people who adopted it, did not understand the force of language." Management Council, 953 P.2d at 843 (quoting Rasmussen v. Baker, 7 Wyo. 117, 50 P. 819, 821 (1897)). From the earliest days following the framing and adoption of our

---

1. The phrase "as required in the case of a bill" is in reference to Art. 4, § 8, which requires every bill to be presented to the governor for approval or disapproval.

2. The Legislature's briefs suggest that a decision to require approval of the governor of proposed constitutional amendments would of necessity include a requirement that the governor approve a call for a constitutional convention under Art. 20, § 3. We decline to speculate in that regard.

constitution, proposed constitutional amendments were presented to the governor for approval. Can it credibly be said that they did not understand the force of language? We think not. Such an argument runs counter to the decisions of this Court which span that same 100–year period of time. We have consistently held that we give much, though not conclusive, weight to legislative interpretation, and although the legislature's interpretation of the constitution is not binding on this Court, we would be loath to interpret the constitution otherwise. *Coronado Oil Co. v. Grieves*, 603 P.2d 406, 411 (Wyo.1979); *Oregon Basin Oil & Gas Co. v. Ohio Oil Co.*, 70 Wyo. 263, 248 P.2d 198, 204 (1952); *Laverents v. City of Cheyenne*, 67 Wyo. 187, 217 P.2d 877, 883 (1950); *State ex rel. Irvine v. Brooks*, 14 Wyo. 393, 84 P. 488, 492–93 (1906). As recently as 1998 the very same proposed constitutional amendment which gives rise to this litigation was voted upon by the Legislature and sent to the Governor for his approval. The Governor disapproved the proposed amendment, and an attempt to override that veto was unsuccessfully initiated in the House of Representatives.

■ The legislature calls to our attention cases from several of our sister states, which support its position. "Indeed it is the right and therefore the obligation of any independent sovereign to interpret and apply the document that defines its sovereign powers." *Management Council*, 953 P.2d at 842. Montana has done so and arrived at a decision, which supports the Governor's position.

■ We have held that decisions in other states bearing on the same or similar constitutional language are afforded persuasive effect. The Governor cites the case of *State of Montana ex rel. Neil C. Livingston v. Frank Murray, as the Secretary of State of Montana*, 137 Mont. 557, 354 P.2d 552, 556–57 (1960), in support of his position. In that case the Montana Supreme Court, in construing constitutional provisions which are virtually identical to those we consider here, likewise determined that its constitution was not ambiguous and that its legislature was required to present proposed constitutional amendments to the governor for approval or disapproval.

■ Finally, we take note that it is almost universally true that the procedures instituted for the amendment of constitutions have purposely been made cumbersome, in order that the organic law may not readily be remolded to fit situations and sentiments that are relatively transitory and fleeting. 16 Am.Jur.2d, Constitutional Law § 22 (1998). The interpretation that we have placed on our constitution with respect to this issue certainly does not add any significant burden to that process. All that is required is that the proposed amendment be presented to the governor for approval or disapproval. If approved, there is no burden. If disapproved, both houses need muster only the same two-thirds majority required for initial passage in order to override the governor's veto. Disapproval may persuade some legislators that their proposal is, inter alia, not wise or prudent, may be a reaction to fleeting or transitory circumstances, or does comport with other provisions of the Wyoming Constitution or the United States Constitution – the sort of "stuff" that political courage is often made of.

The Legislature cites *Hollingsworth v. State of Virginia*, 3 Dall. 378, 3 U.S. 378, 1 L.Ed. 644 (1798) for the proposition that that when a legislative body is acting in a constitution-making capacity, rather than a legislative capacity, the provisions of the United States Constitution relating to requirements applicable to legislation do not apply. Article I, § 7 of the United States Constitution provides:

Section 7

Procedure in Passing Bills and Resolutions

All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills.

Every Bill which shall have passed the House of Representatives and the Senate, shall, before it becomes a Law, be presented to the President of the United States; if he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objec-

tions at large on their Journal, and proceed to reconsider it. If after such Reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law. But in all such Cases the Votes of both Houses shall be determined by yeas and Nays, and the Names of the Persons voting for and against the Bill shall be entered on the Journal of each House respectively. If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a Law.

Every Order, Resolution, or Vote to which the Concurrence of the Senate and House of Representatives may be necessary (except on a question of Adjournment) shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be passed by two thirds of the Senate and the House of Representatives, according to the Rules and Limitations prescribed in the Case of a Bill.

That provision is similar in many respects with Article 3, § 41, and Article 4, § 8 of the Wyoming Constitution. The reasoning process employed by the United States Supreme Court in reaching its decision is not contained in that Court's decision in the *Hollingsworth* case. Moreover, the *Hollingsworth* decision was published in the heat of a bitter controversy over the adoption of the Eleventh Amendment to the United States Constitution ("The Judicial power to the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). *Hollingsworth* has been criticized by many legal scholars, but we are not so much concerned with the tenor of that criticism as we are with the preservation of our own precedents with respect to the interpretation of the Wyoming Constitution. Of course, we are not privy to the reasoning used in the *Hollingsworth* case, but our review of that case, as well as other cases that have relied upon it, reinforces our confidence that the Wyoming Constitution must be interpreted as we have set out above.

We have given careful and thoughtful consideration to the other arguments made and the authorities cited to us by the Legislature in its briefs, as well. We will not explicate each in detail because the following general observations will suffice. The cases, both federal and state, which rely upon the federal model for amending the United States Constitution, U.S. Const. art. V, are not persuasive because the federal model is readily distinguishable from the model chosen by the framers of the Wyoming Constitution. In some instances, we do not find cited cases persuasive because the interpretive rule, which led to a result which differs from our result in this case, was based on reading constitutional provisions as sequestered pronouncements. We continue to be persuaded that our rule of reading the Wyoming Constitution as an integrated document composed of separate parts but united together for a more complete, harmonious and coordinated entity is the proper rule of interpretation. In some instances the pertinent language of the constitutions of other states is so different that there is little if any room for comparison by analogy. In some states, the legislature need pass proposed constitutional amendments by a simple majority. Thus, an interpretation which allowed a gubernatorial veto and the need for an override excessively circumscribed the amendment process as envisaged by the framers of those constitutions. In several cases, an appellate court's result was reached by distinguishing "law making" from proposals of constitutional amendments, which were viewed by those courts as not being "law making." We perceive little if any difference between the process employed by the legislature in enacting bills which may become a part of Wyoming Statutes and the process used to propose constitutional amendments. To the extent there is a difference, it is not a meaningful distinction which

we need to recognize. In the final analysis, the Legislature is engaged in the process of "law making." We are unable to find anything in the cited decisions, which rely on that line of reasoning, that persuades us to adopt it. Finally, as has been said by many, if not all, appellate courts which have interpreted constitutions – our constitution, in some respects, is unique. That being so, it is altogether a benefit to the democracy founded upon the bedrock law of the Wyoming Constitution. The interpretation we articulate here enhances the strength of that bedrock law.

For the reasons set out above, we answer the certified question in the affirmative and hold that the Secretary of State shall not place the proposed constitutional amendment on the 2000 General Election ballot for consideration by the People of the State of Wyoming.

LEHMAN, Chief Justice, dissenting, with whom THOMAS, Justice, joins.

Because the Wyoming Constitution contains no express provision conferring upon the governor veto power over a proposed constitutional amendment, I would answer the certified question in the negative. The process for amending the Wyoming Constitution is found in article 20 of that document, and nowhere does it require a proposed constitutional amendment be presented to the governor for his approval. Article 4, § 8 delimits the governor's veto power, and that provision includes no veto power over proposed constitutional amendments. Likewise, the legislative article, art. 3 (specifically § 41 of that article), contains no express provision requiring a proposed constitutional amendment be presented to the governor for his approval. For the following reasons, I respectfully dissent.

Two important principles guide the interpretation of the constitution in this case. The first and

> primary principle underlying an interpretation of constitutions or statutes is that

the intent is the vital part, and the essence of the law. * * * Such intent, however, is that which is embodied and expressed in the statute or instrument under consideration. * * * If the language employed is plain and unambiguous, there is no room left for construction. It must be presumed that in case of a constitution the people have intended whatever has been plainly expressed. Courts are not at liberty to depart from that meaning which is plainly declared.

*Management Council of Wyoming Legislature v. Geringer*, 953 P.2d 839, 843 (Wyo. 1998) (quoting *Rasmussen v. Baker*, 7 Wyo. 117, 128, 50 P. 819, 821 (1897)).

The second principle to be observed is that our constitution makes clear that no branch of government may exercise any power unless expressly permitted by the constitution. Article 2 provides:

> **§ 1. Powers of government divided into three departments.**
>
> The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, *except as in this constitution expressly directed or permitted.*

(Emphasis added.) In respect to the separation of powers provision, this Court has rejected the "airtight compartment" approach. *Billis v. State*, 800 P.2d 401, 413–15 (Wyo. 1990). However, the question presented in this case is not whether one branch of government is infringing on another in an arena where both branches are permitted to act. *Id.* Instead, the question is whether the governor has any power to act at all, *i.e.*, whether the governor has the power of veto over proposed constitutional amendments.

The first and clearest answer to this question is that Wyoming's Constitution includes a specific provision governing amendments to the constitution, from which submission to the governor is carefully excluded. Article 20, entitled "Amendments," provides in pertinent part:

## § 1. How amendments proposed by legislature and submitted to people.

Any amendment or amendments to this constitution may be proposed in either branch of the legislature, and, if the same shall be agreed to by two-thirds of all the members of each of the two houses, voting separately, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered on their journals, and it shall be the duty of the legislature to submit such amendment or amendments to the electors of the state at the next general election, and cause the same to be published without delay for at least twelve (12) consecutive weeks, prior to said election, in at least one newspaper of general circulation, published in each county, and if a majority of the electors shall ratify the same, such amendment or amendments shall become a part of this constitution.

Given the principles that guide the interpretation of our constitution, it is important to look at not only what that document says, but also what it does not say. Requirement of presentment of a proposed constitutional amendment to the governor requires that words be read into art. 20 that are not there. Indeed, reading such a requirement into art. 20 is contrary to the words that are there.

The words that are contained in art. 20, § 1 set out a rather simple process for amending the constitution. First, a proposal must be made in either branch of the legislature. Next, a vote is taken in both houses. If two-thirds of the members of both houses agree, the proposed amendment, with the yeas and nays thereon, is entered upon their journals. Publication is the next step, followed by submission to the electors at the next general election. If a majority of the electors ratify the amendment(s), the amendment(s) "shall become a part of th[e] constitution." Nowhere in these words is a requirement of presentment expressed. Nor can such a requirement be implied, as it is not the place of this Court to create constitutional powers that are not expressly enunciated. Wyo. Const. art. 2, § 1. However, because the other constitutional provisions must be read *in pari materia*, this does not end the analysis.

Article 4, concerning the executive power, includes a provision expressly delimiting the governor's veto power:

## § 8. Approval or veto of legislation by governor; passage over veto.

Every bill which has passed the legislature shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it; but if not, he shall return it with his objections to the house in which it originated, which shall enter the objections at large upon the journal and proceed to reconsider it. If, after such reconsideration, two-thirds of the members elected agree to pass the bill, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if it be approved by two-thirds of the members elected, it shall become law; but in all such cases the vote of both houses shall be determined by the yeas and nays, and the names of the members voting for and against the bill shall be entered upon the journal of each house respectively. If any bill is not returned by the governor within three days (Sundays excepted) after its presentation to him, the same shall be a law, unless the legislature by its adjournment, prevent its return, in which case it shall be a law, unless he shall file the same with his objections in the office of the secretary of state within fifteen days after such adjournment.

Clearly, nothing in this provision includes a specific veto power over proposed constitutional amendments.

Turning to the legislative article, art. 3, I do not believe the language of § 41 of that article can be tortured to permit, much less require, presentment. That section provides:

## § 41 Resolutions; approval or veto.

Every order, resolution or vote, in which the concurrence of both houses may be necessary, except on the question of adjournment, or relating solely to the transaction of the business of the two houses, shall be presented to the governor, and before it shall take effect be approved by him, or, being disapproved, be repassed by two-thirds of both houses as prescribed in the case of a bill.

Unmistakably, this section contains no express provision requiring "proposed amendments" be presented to the governor. Instead, such a requirement, if there is to be one, must be implied. *See Warfield v. Vandiver*, 101 Md. 78, 60 A. 538, 541 (1905) ("Unless the express language of the Constitution has unequivocally clothed the Governor with [veto] authority in relation to proposed constitutional amendments, * * * it cannot be borrowed from some other provision pertaining to a wholly different subject.") It is suggested that the amendment process contained in art. 20 includes a "vote," and that process thus falls within the parameters of § 41. However, I am of the opinion that the "vote" provision of § 41 refers to art. 3, § 25, entitled "Vote required to pass bill." Indeed, "bill" is not referred to in § 41, and I believe this interpretation of "vote" found in § 41 is sound and by no means renders that provision superfluous. However, even assuming a proposed amendment falls within the "vote" requirement, the "shall take effect" language found in § 41 separates it from the proposed amendment realm. Section 41 indicates that presentment is required of those votes that, upon the governor's approval, "shall take effect." Clearly, no amendment to the constitution takes effect until it is approved by a majority of the voting electorate.

After a review of the pertinent provisions, I can discern no clear intent on the part of the framers of the Wyoming Constitution that the governor hold the power of veto over proposed amendments. First, art. 20, the specific article governing amendments to the constitution, does not include a veto provision. In addition, art. 4, § 8, concerning the governor's veto power, does not permit or imply a veto over proposed constitutional amendments. Another clear indication of the framers' intent is that the two-thirds vote requirement found in art. 20, § 1 is the same proportion required to override the governor's veto under art. 3, § 41. For these reasons, after having read the various constitutional provisions *in pari materia*, I would conclude the framers did not intend that the governor have the power of veto in this instance.

Additional reasons support this conclusion. First, applying § 41 to the amendment process would place a proposed constitutional amendment on the same footing as a bill. However, there is a fundamental structural difference between general legislation, including bills, and the constitutional amendment process. In the case of general legislative action, the legislature proposes laws that are subject to gubernatorial veto. It is, therefore, those two authorities that control general legislative action. By contrast, constitutional amendments, although proposed by the legislature, are subject to the final approval of the electorate of this state. In this way, these two authorities, the legislature and the electorate, work together in amending the constitution. Instead of the governor, the people hold the power of veto over a proposed constitutional amendment. "Whilst the Governor is intrusted with power to protect the people against hasty legislation, he is not given a prerogative to guard them against themselves in the matter of amending the [constitution]. He is not superior to them. It is their will which he must obey; it is not his will which they must subserve." *Warfield v. Vandiver*, 60 A. at 541.

Application of § 41 of the legislative article should be rejected for another reason. The pertinent cases generally agree that "[t]he legislature, in taking any steps toward the framing of a constitution, does not act in its legislative capacity." *Hutcheson v. Gonzales*, 41 N.M. 474, 71 P.2d 140, 145 (1937); *Mitchell v. Hopper*, 153 Ark. 515, 241 S.W. 10, 12 (1922); *Ellingham v. Dye*, 178 Ind. 336, 99 N.E. 1, 3–7 (1912); *Opinion of the Justices*, 261 A.2d 53, 57 (Me.1970); *State ex rel. Wineman v. Dahl*, 6 N.D. 81, 68 N.W. 418 (1896). This conclusion is based on the following reasoning:

> In submitting propositions for the amendment of the constitution, the legislature is not in the exercise of its legislative power, or of any sovereignty of the people that has been intrusted to it, but is merely acting under a limited power, conferred upon it by the people, and which might with equal propriety have been conferred upon either house, or upon the governor,

or upon a special commission, or any other body or tribunal.

*Hutcheson v. Gonzales,* 71 P.2d at 147. The framers of Wyoming's Constitution must have recognized this distinction. Indeed, if the framers had viewed the task of proposing amendments to the constitution as simply another law-making function, they could have placed the amendment provision in the legislative article. However, the framers of our constitution did not do this. They recognized this distinction made a difference and placed the amendment process in a separate article, art. 20. It is this article that should control the outcome of this case, not the legislative article.

Along the same lines, we must not forget that, under our concept of government, sovereignty has its source in and represents a grant from the people who are governed. *Rasmussen v. Baker,* 7 Wyo. 117, 133, 50 P. 819, 822–23 (1897). The preamble to the Constitution of the State of Wyoming makes this clear:

> We, the people of the State of Wyoming, grateful to God for our civil, political and religious liberties, and desiring to secure them to ourselves and perpetuate them to our posterity, do ordain and establish this Constitution.

In setting out the process for amending the constitution, the people, pursuant to the constitution, have delegated a portion of this duty to the legislature under art. 20. At the same time, however, the people have retained the final power to amend the constitution by popular vote. Because nowhere does the constitution of this state clearly express that the people have delegated to the governor any involvement in the constitutional amendment process, I would not imply such a delegation.

The majority criticizes the case of *Hollingsworth v. State of Virginia,* 3 Dall. 378, 3 U.S. 378, 1 L.Ed. 644 (1798), while at the same time acknowledging that art. I, § 7 of the United States Constitution is "similar in many respects" to art. 3, § 41 of the Wyoming Constitution. Unlike the majority, I find this similarity significant for two reasons. First, *Hollingsworth* was decided in 1798. When the framers of the Wyoming Constitution convened over 90 years later, they employed essentially the same language in art. 3, § 41 as that found in the United States Constitution. Under the majority's view, despite use of the same language, the framers of the Wyoming Constitution intended an opposite result than that reached by the United States Supreme Court in *Hollingsworth.* Without clear language so indicating, I cannot agree that this was the framers' intent. In addition, even assuming *Hollingsworth* initially stood on shaky ground, it has found solid footing in the opinions of the numerous courts that have followed its reasoning. In fact, the vast majority of courts deciding this issue have reached the conclusion that presentment is not required. *Commonwealth ex rel. Attorney General v. Griest,* 196 Pa. 396, 46 A. 505, 510 (1900); *Warfield v. Vandiver,* 101 Md. 78, 60 A. 538, 545 (1905); *Opinion of the Justices,* 261 A.2d 53, 57–58 (Me.1970); *Kalber v. Redfearn,* 215 S.C. 224, 54 S.E.2d 791, 796–98 (1949); *Mitchell v. Hopper,* 153 Ark. 515, 241 S.W. 10, 12–14 (1922); *State v. Mason,* 9 So. 776, 795–96 (La.1891); *People ex rel. Stewart v. Ramer,* 62 Colo. 128, 160 P. 1032, 1033 (1916); *Collier v. Gray,* 116 Fla. 845, 157 So. 40, 45 (1934); *State ex rel. Wineman v. Dahl,* 6 N.D. 81, 68 N.W. 418, 418–419 (1896).

Finally, it is insisted that great weight should be given to the legislature's longstanding practice of presenting proposed constitutional amendments for approval. However, even a long-continued practice of the legislature cannot have the effect of imposing duties upon the governor beyond those provided by the constitution. *Opinion of the Justices,* 261 A.2d at 58; *Kalber v. Redfearn,* 54 S.E.2d at 794–95; *Warfield v. Vandiver,* 60 A. at 541; *see also Campbell County School District v. Catchpole,* 6 P.3d 1275 at 1282 (Wyo. 2000) ("If a statute is ambiguous, we will give some deference to an interpretation by the agency charged with execution of the statute unless its interpretation is clearly erroneous. * * * Even then, however, we are not bound by an agency's interpretation; the final construction of an ambiguous statute is a question for the court.") Regardless, the governor's argument presents a double-

edged sword. At its core, the argument is that the legislature's interpretation of the constitution, *i.e.*, that presentment is required, should be given deference. However, assuming the legislature's decision on presentment should be given deference, should not the same deference be given to the current legislature's decision to forgo presentment? In addition, the fact that the question presently before the Court has never been determined despite three (one in 1941, one in 1947, and Governor Geringer's 1998 veto) previous vetoes of proposed amendments is of little moment; it is not for this Court to investigate the circumstances and motives surrounding those prior vetoes. Instead, this Court is only concerned with the question of law currently before it, a question I would answer in the negative.

THOMAS, Justice, dissenting.

I join without reservation in the dissenting opinion authored by the Chief Justice. I have some concerns, in addition to the views there set forth, that I choose to address. Primarily, I am concerned about the advisability of structuring a single person impediment to the control our citizens are entitled to maintain over their constitution. I also wonder how the secretary of state is to comply with mandatory, statutory language, relating to the ratification of an amendment in light of the majority resolution of this question. Furthermore, it seems to me that the majority opinion has ignored an exception articulated in Wyo. Const. art. 3, § 41, even though the majority opinion essentially relies on that provision of the Constitution to justify its answer to the certified question.

My philosophical premise is that in our country and the State of Wyoming the citizens possess all the attributes of sovereignty. They have chosen to delegate those powers, in part, to both the state and federal governments, and the instruments by which that delegation is accomplished are the constitutions. More than a century ago this Court spoke to that principle in a case in which the intent of the first sentence of Wyo. Const. art. 6, § 9 ("[n]o person shall have the right to vote who shall not be able to read the constitution of this state.") was in issue. In

the course of holding that, since the constitution was written in English, this sentence required an elector to have the ability to read it in English, the court said:

> The subject-matter of the article in which it appears is "Suffrage." It prescribes the qualifications of electors. In gathering the intent from the language employed in a law covering that subject, there are certain additional rules of construction which should be observed. Statutes which confer or extend the elective franchise should be liberally construed. Suth. St. Const. 441. The voter must, without any undue straining of the language in any direction, come within the terms of the law, and all reasonable doubts should be resolved in his favor. "Such is the fair tendency of our institutions." *People v. Dean*, 14 Mich. 406, 417. As a reasonable corollary of those principles, we think it should follow that any provision which excludes any class of citizens from the exercise of the elective franchise ought to receive a strict construction, without, however, doing violence to or distorting the language, to the end that none shall be held excluded who are not clearly designated. *Such a rule would seem to be the natural and reasonable outgrowth of the fundamental principles of our form of government. The sovereignty resides in the people, although, by written constitutions, they have delegated the exercise of sovereign powers to several departments. The people "retain in their own hands a power to control the governments they create as far as they have thought needful to do so; and the three departments are responsible to and subject to be ordered, directed, changed, or abolished by them. But this control and direction must be exercised in the legitimate mode previously agreed upon." Cooley, Const. Lim. 598.* "Participation in the elective franchise is a privilege rather than a right, and it is granted or denied on grounds of public policy; the prevailing view being that it should be as general as possible consistent with the public safety." *Id.* 599. The sovereign power residing primarily in all the people, but in fact and practically with those only who possess the

right of suffrage, it would seem that none who are not clearly embraced in any restriction upon such right should be excluded.

*Rasmussen v. Baker,* 7 Wyo. 117, 132–33, 50 P. 819, 822–23 (1897) (emphasis added).

In my judgment, the majority resolution of this case is antithetical to the retained power of the people to control their government in the mode previously agreed upon. The mode agreed upon in the Wyoming Constitutional Convention clearly is articulated in Wyo. Const. art. 20, § 1:

> Any amendment or amendments to this constitution may be proposed in either branch of the legislature, and, if the same shall be agreed to by two-thirds of all the members of each of the two houses, voting separately, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered on their journals, and it shall be the duty of the legislature to submit such amendment or amendments to the electors of the state at the next general election, and cause the same to be published without delay for at least twelve (12) consecutive weeks, prior to said election, in at least one newspaper of general circulation, published in each county, and if a majority of the electors shall ratify the same, such amendment or amendments shall become a part of this constitution.

No mention is made in this Article of any participation by the Governor, and I cannot conceive that the Constitutional Convention could have intended that the citizens of Wyoming " 'retain in their own hands a power to control the governments they create as far as they have thought needful to do so * * *,' " and yet at the same time subject that sovereign power to the control of one person. *Rasmussen,* 50 P. at 822 (*quoting* Cooley, Const. Lim. 598). That result inverts the understanding that, " 'the three departments are responsible to and subject to be ordered, directed, changed, or abolished by them.' " *Rasmussen,* 50 P. at 822 (*quoting* Cooley, Const. Lim. 598). Surely, the sovereign rights owned by the people are far too valuable to permit one single person to control the process.

The majority opinion claims that the process that it visualizes does not impose any significant burden on the process for amending the Wyoming Constitution. It is clear to me that the same rationale that the majority applies with respect to Wyo. Const. art. 20, § 1 would apply with equal force to the provisions of Wyo. Const. art. 20, § 3 providing for the legislature to call a constitutional convention. My vision is that politics being politics, a requirement that there be a second vote agreed to by two-thirds of all the members of each house in order to override a gubernatorial veto of a proposed amendment probably makes the amendment of the Constitution not simply difficult, but in most instances impossible. I simply refuse to believe that the people, acting through their representatives at the Constitutional Convention, intended to sacrifice so easily their control over their sovereign rights.

The majority result certainly does not acknowledge the mandatory duties imposed upon the secretary of state and other officials with respect to ballot ratification of proposed amendments. For example, pertinent statutes require:

> (a) A proposed amendment *shall* be transmitted to the office of the secretary of state by the house in which it originates or by a constitutional convention. The secretary of state *shall* letter each proposed amendment serially in the order received from the legislature or convention and *shall* endorse upon a proposed amendment, a brief statement of the purpose of the amendment. If the bill proposing the amendment provides this statement, it *shall* be adopted by the secretary of state.
>
> (b) The letter and statement endorsed on a proposed amendment are part of the amendment for purposes of reference in submitting the amendment to the electors and *shall* constitute the ballot statement of the amendment.

Wyo. Stat. Ann. § 22–20–102 (Lexis 1999) (emphasis added).

> The secretary of state *shall* mail a certified copy of a proposed amendment and statement of its purpose filed in his office to each county clerk not less than sixty (60) days prior to the election at which the

proposed amendment is submitted to the electors. The county clerk *shall* immediately post in his office the copy of a proposed amendment and statement of its purpose received from the secretary of state. The copy *shall* remain posted until after the election at which the amendment is submitted to the vote of the electors.

Wyo. Stat. Ann. § 22–20–103 (Lexis 1999) (emphasis added).

(a) The secretary of state *shall* publish each proposed amendment and a notice that it will be submitted to the electors at the next general election, once a week for at least twelve (12) consecutive weeks prior to the election in a newspaper of general circulation published in each county and, if possible, once each week for three (3) consecutive weeks within thirty (30) days prior to the election in one (1) other newspaper of general circulation in each county.

(b) The clerk may supplement publication thereof by radio or television broadcasts or both. The broadcasts shall identify the proposed amendment or other question, by letter and statement of purpose as prescribed by law, and shall state the name of the newspaper in which the published notice will appear and the date on which it will appear.

Wyo. Stat. Ann. § 22–20–104 (Lexis 1999) (emphasis added).

The secretary of state *shall* print a reasonable number of pamphlets containing every proposed amendment and provide a copy of the pamphlet upon request to any person or organization.

Wyo. Stat. Ann. § 22–20–105 (Lexis 1999) (emphasis added).

The county clerk *shall* print on the official nonpartisan general election ballot for the next general election the statement of purpose of each proposed amendment certified to him by the secretary of state.

Wyo. Stat. Ann. § 22–20–107 (Lexis 1999) (emphasis added). All of these statutes use the mandatory verb "shall," indicating that no discretion can be exercised with respect to the duties imposed. In Wyo. Stat. Ann. § 22–20–101 (Lexis 1999) no mention is made of any participation by the Governor in connection with the requirement that the amendment be transmitted to the secretary of state by the house in which it originated.

In the implementation of the process of ratification by these statutes, which are rather precise, it is strange that the legislature did not provide for the proposed amendment to be transmitted by the Governor to the secretary of state if the constitutional intent is that claimed by the majority opinion. It seems that when these statutes were adopted, there was no perception that the Governor would have a role in the process of the amendment of the constitution, other than the proclamation required by Wyo. Stat. Ann. § 22–20–107.

Finally, I cannot help but wonder about the exception incorporated in the language of Wyo. Const. art. 3, § 41:

Every order, resolution or vote, in which the concurrence of both houses may be necessary, *except on the question of adjournment, or relating solely to the transaction of the business of the two houses,* shall be presented to the governor, and before it shall take effect be approved by him, or, being disapproved, be repassed by two-thirds of both houses as prescribed in the case of a bill.

(Emphasis added.) I am persuaded that Wyo. Const. art. 20, § 1 describes legislative action "relating solely to the transaction of the business of the two houses * * *." Wyo. Const. art. 3, § 41. This constitutional provision reads:

*Any amendment or amendments to this constitution may be proposed in either branch of the legislature, and, if the same shall be agreed to by two-thirds of all the members of each of the two houses, voting separately, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered on their journals, and it shall be the duty of the legislature to submit such amendment or amendments to the electors of the state at the next general election,* and cause the same to be published without delay for at least twelve (12) consecutive weeks, prior to said election, in at least one newspaper of general circulation, published in each county, and if a majority

of the electors shall ratify the same, such amendment or amendments shall become a part of this constitution.

Wyo. Const. art. 20, § 1 (emphasis added). This language clearly imposes a duty on the legislature to submit the amendment to the electors at the next general election, and its clear meaning is to describe a matter "relating solely to the transaction of the business of the two houses * * *." Wyo. Const. art. 3, § 41. The mandatory statutes quoted above were adopted to accomplish these duties imposed by the constitution.

I recognize that the majority must prefer the view that the exception found in Wyo. Const. art. 3, § 41 must be read in a limited way to describe the internal operating procedures of the legislature. The language, however, is not clearly so limited, and I see no reason why it could not be applied to the legislative duties set forth in Wyo. Const. art. 20, § 1.

For these reasons, in addition to the rationale set forth in the dissenting opinion of the Chief Justice, I would answer the certified question in the negative.